Eastern Dis.
*April*, 1834.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

PSYCHE *vs.* PARADOL ET AL., DUREL APPELLANT.

APPEAL FROM THE PARISH COURT, OF THE PARISH AND CITY OF NEW-ORLEANS.

The sale, by the executor, of property bequeathed as a specific legacy, is wholly irregular and void.

Neither the old *Civil Code*, nor the 11th law of the 2d title of the 3d Partida, authorised the appointment of a curator *ad hoc*, to represent a minor under the age of puberty.

The validity of a judgment, not reversed or appealed from, cannot be collaterally examined by either of the parties.

After the argument has commenced, new evidence cannot be introduced, except by consent of parties; but cases may occur in which the court might allow it under particular circumstances, and in the exercise of a sound discretion.

This action is brought to recover from the original defendant, a negro woman with her two children, and the hire of the said slaves.

To the petition, the original defendant filed on the 18th of July, 1832, an exception, viz. that it did not contain the residence of the plaintiff, and prayed that on this ground the petition might be dismissed.

On the 23d of the same month, the plaintiff's attorney appeared in open court, confessed that the exception was well founded, and obtained leave to amend his petition by inserting the residence, and directing the motion and order to be served on the defendant. This rule is on the minutes. The motion and order do not appear to have been served, but on the 10th of October, 1832, the original defendant answered to the merits, without any objection or reserve as to this course of proceeding. By the same answer, the original defendant called in warranty the present appellant, Jean Baptiste Durel, her vendor, who on the 23d of Novem-

ber, filed his exception to the want of mention of the
plaintiff's residence in the original petition, and prayed that
the same be dismissed, so far as he, the warrantor, is
concerned.

PSYCHE
vs.
PARADOL
ET AL.,
DUREL,
APPELLANT.

On the 9th of February, 1833, the cause was called for
trial on the exception of Durel, and the exception was
overruled.

The facts, as disclosed by the record in this case, are as
follows:

On the 30th of September, 1812, Marie Elizabeth Heloise
Delahage, a free woman of color, made a nuncupative
testament by authentic act, by which she bequeathed some
slaves to the plaintiff, a minor, about four years old, of father
and mother unknown; other slaves to her niece, Isis Bujac,
residing in Philadelphia; gave a legacy of one hundred
dollars, to one Lolo Brémont, and ordered that the surplus
of the sale of her other property, be equally divided between
the said plaintiff and the said Isis Bujac. By this testa-
ment, she also appointed J. B. Thierry, her executor,
and requested him to become the tutor of the plaintiff. She
died in 1813.

Among the slaves thus bequeathed to the plaintiff, was one
by the name of Françoise. Françoise was, nevertheless, sold
by the said Thierry, the testamentary executor, under an order
of the Court of Probates, to Joseph Guillaume Lespinasse,
who sold her to Durel, by whom she was sold to the
defendant.

The testament was admitted to probate.

Thierry applied for, and obtained letters testamentary.
They were signed by the Register of Wills, only.

No seals were affixed.

No public, but two private inventories were made.

Thierry, filed a petition for the homologation of the
inventory, and for the sale of the property, partly in cash,
and partly on a credit.

On this an order was given, June 26, 1819, in these
words: "Let the inventory be approved and homologated,
and the sale made according to law."

EASTERN DIS.
April, 1834.
═══════════
PSYCHE
vs.
PARADOL
ET AL.,
DUREL,
APPELLANT.

The sale was made by the Register of Wills, according to the petition of the executor. Françoise was sold to Joseph Guillaume Lespinasse, for five hundred and seventy dollars.

In his process verbal, the deputy register does not state that the necessary advertisements had preceded the sale.

Thierry received the amount of the sales, being in all one thousand one hundred and fifteen dollars.

Thierry died in 1815, leaving a testament in which he instituted his minor daughter, residing in France with her grandfather, his universal legatee, and appointed Cypreis Gros and Guibert, his testamentary executors.

*Moreau Lislet,* filed a petition in which he states, that he had been appointed in France, pro-tutor of the minor heir of Thierry; that in this capacity, he wishes to render an account of Thierry's administration of Marie Elizabeth Heloise Delahage's estate; that said Thierry had obtained an authorisation to sell the property of said estate to satisfy the debts of said estate, the most of which were contracted during the last illness of the said Delahage, &c. He adds, that whereas the said Psyche, is under twelve years of age, and no person, not even Pierre St. Amand, was willing to accept her guardianship, he prays that a curator *ad hoc,* be appointed to her, and that said curator be cited to show cause why the account filed by the said Moreau Lislet, on behalf of the said late Thierry, should not be homologated.

To this petition is annexed an account, stating Thierry's expenses for Delahage's estate to have been one thousand and eighteen dollars, crediting the present plaintiff with five hundred and seventy dollars, as the price of the slave Françoise, and leaving in her favor a balance of five hundred and thirty-five dollars.

Upon this petition an order was granted, appointing Henry Henry, Esq., curator *ad hoc,* and citing him to show cause, &c.

Finally Moreau Lislet's account was homologated, and he was ordered to pay to the said Psyche, five hundred and thirty-five dollars, with five per cent. interest, from the 5th of March, 1815, the time of Thierry's death.

The plaintiff had judgment against the defendant. In favor of the latter a similar judgment was rendered against the warrantor, who appealed.

EASTERN DIS.
*April,* 1834.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

*J. Seghers,* for warrantor and appellant, argued as follows:

The exception is a peremptory one, and the vendee of Durel could not give it up to his prejudice; Durel is, therefore, entitled to have the original petition dismissed, as to him, on this exception, without regard to the pretended amendments.

This exception being once raised, cannot be disposed of except by a trial and judgment, sustaining or dismissing the exception. An amendment cannot be allowed disposing of the exception in a collateral way, and defeating its object, which is the dismissal of the suit. *Code of Practice, articles* 172, 343, 344. *Projet* of the *Code of Practice, p.* 62.

The practice in France, at the time *Pothier* wrote, was, with regard to the manner of bringing suits, nearly the same as before our City Court, where no petition is required, but the defendant is served with a citation explaining the nature of the action. In France it was held necessary that the citation should contain all. *Article* 172 *of Code of Practice.* *Pothier,* 1st *part, chap.* 1st, *page* 3. *Pothier, article* 4, *"sur la forme des adjournemens."*

The same peremptory exceptions, which were urged in France against an *exploite de demande,* may be used here to defeat a claim brought under the form of a *petition.*

The cases where a petition *cannot be dismissed,* though the defendant may refuse to answer, are pointed out in article 320, which *thus* draws a strong line of distinction between such exceptions, and those that are of a peremptory nature.

Should the court be of opinion that the inferior tribunal was right in overruling *it,* then the merits of the case must be inquired into, and the first consideration to which we must attend is, that the point in controversy being a mere question of law, the verdict of the jury is not entitled

EASTERN DIS.
*April*, 1834.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

to the same degree of confidence, as upon a question of fact. The charge of the judge was the true cause of the verdict. Under such circumstances, we maintain that the verdict cannot be entitled to any credit. A jury are undoubted judges of questions of fact, and of the question of damages, and it is the duty of a court to respect their decision on these points; but in the present instance, the question submitted to the jury was a mere point of law. 2 *N. S.* 643. *Dressen* vs. *Cox.*

On the merits, the case turns on the following points:

That the plaintiff cannot maintain her present action of *revendication*, because on the 31st of July, 1818, a final judgment was rendered by the Probate Court of New-Orleans, contradictorily with her, she being duly represented by a curator *ad hoc;* that by this judgment, the account of the estate of Marie Elizabeth Heloise Delahage, deceased, rendered by the heir of the testamentary executor of the latter, was approved and homologated; that it is therein stated that the slave Françoise had been sold by order of court, through the Register of Wills; that the price of the slave Françoise, now claimed in kind with her issue by the plaintiff, is fully laid down in said account; that no appeal has ever been taken from this judgment, which has acquired the force of *res judicata*; and that even supposing, for arguments sake, the plaintiff ever to have had any right of *ownership* in the slave Françoise and her issue, she has entirely lost the same by virtue of said judgment.

The question then is, whether with a former judgment standing unreversed, and forming *res judicata*, the plaintiff can recover in the present action? For if the verdict of the jury was allowed to remain undisturbed, the proceedings in relation to the rights of the minor, would present very singular features. There would be a judgment of a court of competent jurisdiction, deciding that the plaintiff was entitled to *the price of the slave*; there would be another, which, leaving the first judgment unreversed, would declare that she was *the owner of the slave.*

The first decree is as a plea, a *bar* or evidence *conclusive*
between the parties. The errors which it may contain,
were questions for the decision of the court which tried the
cause, and the Supreme Court have no power to examine
how they were decided, unless regularly brought before them
by appeal, or by an action of nullity in those cases where the
law affords such remedy. 5 *N. S.* 165, *Martin* vs. *Martin.*
2 *Louisiana Reports*, 589, 590, *Andrews* vs. *Herman.*

In 1818, a curator *ad hoc*, was appointed to the minor, agreeably to law 11, *tit.* 2, *Partida* 3. *Curia filipica, fol.* 54. *No.* 8, *Verbo litigantes. Project of the Code of Practice, fol.* 21.

*Cuvilier*, for plaintiff and appellee.

*Janin*, on the same side, relied on the following points and authorities:

Nothing could authorise the executor to violate the directions of the testatrix, and his conduct in this and in other respects, was highly illegal.

Thierry's letters testamentary, ought to have been signed by the Judge of Probates. *Act, July* 3, 1805.

According to *art.* 173, *p.* 246 *of the old Code*, he ought to have caused the seals to be affixed, and an inventory to be made by the parish judge, or by any notary duly authorised by the said judge, in the presence of the presumptive heir or heirs, expressly called, &c. This must be a public inventory. *Ibid.*

There were none but testamentary heirs in this case, the plaintiff was one of them, she was not called, nor was her representative in her place, nor had she a representative, nor was one appointed to her.

One inventory only was approved, two had been made, which was approved and which not?

The sale was ordered to be made according to law. Did the judge thereby, also, approve the terms proposed by the executor?

The sale was ordered to be made according to law, and as it was partly on credit, it could not be made without the

EASTERN DIS.
*April,* 1834.
══════════
PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
. APPELLANT.

concurrence of the heirs, or their representatives, who never were cited. See *Old Code, p.* 175, *art.* 29. This article applies to testamentary executors as well as to curators of vacant successions, or absent heirs. *Old Code, p.* 247, *art.* 174.

Is it not incumbent upon the appellant, to show that they had?

By the testament, Françoise became the property of the plaintiff, a minor's property, and could, therefore, only be .sold in the cases and in the form, in which the alienation of such property is permitted. It is not, and cannot be pretended, that the debts of the succession rendered the alienaation of this property necessary. See *Fletcher* vs. *Cavelier,* 4 *Louisiana Reports,* 270, and the cases there cited on the sale of minor's property. The case of *Bynur* vs. *Lemerin,* 1 *N. S.* 628, is more particularly applicable to this case. See also, *Donaldson* vs. *Dorsey's syndics,* 5 *N. S.* 654.

As Thierry had rendered no account of his administration, as executor of the plaintiff's testator, his own executor ought to have rendered this account.

The plaintiff has never received any part of the five hundred and thirty-five dollars, and still this is the judgment which is said to deprive the plaintiff of her right of action in this suit.

This pretension is entirely unsupported by law.

The law has prescribed many regulations for the protection of the minor. They have been utterly violated in this case, than which few will better show their necessity.

The minor was not duly represented. A truly responsible person, a tutor, ought to have been appointed to her. If a person wishes to proceed against a minor, he must procure the appointment of a tutor, if the minor has none. *Old Code, p.* 65, *art.* 28. It is stated in the petition referred to, that no person was willing to accept the plaintiff's guardianship. An unproved allegation in a petition, is no guide to the judge; and if even no person had been willing to accept it, some person could have been forced to it. If the judge had made an appointment, the person appointed would have been

EASTERN DIS.
*March*, 1834.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

obliged to act, unless he could claim the benefit of the grounds of excuse, enumerated on pages 65 and 67 of the *Old Code*. No other excuse is admissible, if, as in this case, the minor has no relations in the territory. *Old Code, p.* 67, *art.* 39. And even if he had a valid excuse, the nominee is obliged to act, until on hearing his grounds of excuse, the court discharges him. *Old Code, p.* 67, *art.* 46. " The law has made an acceptance of this office compulsory, unless the person nominated is one of those who are excused from serving." *Bernard* vs. *Vignaud,* 1 *N. S.* 56.

If the minor be above the age of puberty, he cannot appear in a court of justice, without the assistance of a curator *ad litem,* and if he has none, the judge must appoint one. *Old Code, p.* 74, *art.* 86.

Every tutor and curator, *ad litem,* must take an oath before entering on the duties of his office. *Old Code, p.* 69, *art.* 53; *p.* 75, *art.* 85. Such was the Roman, the Spanish and the French law *Code. Lib.* 5, *tit.* 37, *l.* 28, *sec.* 4. 1 *Tap.* 154. 4 *Tap.* 13. *Merl. Rep. Curateur, sec.* 1, *No.* 5. By the *New Code, article* 295, the tutor appointed at the request of a third person, who wishes to proceed against a minor, is also bound to take an oath.

Under no circumstances (at least under the *Old Code,*) can a minor be represented by a curator *ad hoc.* And whenever the appointment of a curator *ad litis,* is admissible, the the minor (above the age of puberty) if, as in this case, he resides in the state, must be consulted. The duty of appointing him, falls on the judge only, if the minor neglects or refuses to do so. *Part* 6, *tit.* 16, *lcx.* 13, *No.* 2.

Several decisions of this court have been rendered upon analogous principles.

In *Heno* vs. *Heno,* 9 *Mart. Rep.* 646, a minor under the age of puberty, was represented by a curator *ad litem.* The court said, that she ought to appear by a tutor. In *Onvesto* vs. *Rills,* 8 *N. S.* 585, an act of an administrator, otherwise perfectly legal, was not held binding upon the party contracting with him, because the administrator had not taken an oath; and in *Hasty* vs. *Hasty,* 8 *N. S.* 525, an adjudication

EASTERN DIS.
April, 1834.

PSYCHE
vs.
PARADOL
ET AL.,
DUREL,
APPELLANT.

under the advise of a family meeting, was set aside, because the members had not been sworn.

In this case a curator *ad hoc* was appointed, and he did not take an oath.

This curator took no steps for her security, and never objected to the amount presented on behalf of Thierry, which on its face is exhoi bitant. One thousand and eighteen dollars, the whole of which, with the exception of a legacy of one hundred dollars, was laid out, according to Thierry, for expenses of last sickness and the settlement of so small an estate, free from all debts; and although Thierry cumulated the functions of executor, of the executor's counsel, and of counsel of all the parties concerned, although no fees of counsel nor fees of physicians were paid, as is expressly declared.

The curator never inquired into the correctness of this account. The opposite parties put interrogatories in writing, of which, as far as appears on record, the curator took no notice, and which were annexed and sworn to before a justice of the peace. Page 20 and 24.

Moreau Lislet, the said curator, then drew up a judgment by consent, which was signed by them and filed in the Court of Probates, and adopted by the court, in entire conformity with Moreau Lislet's prayer. It became the opinion of the court; it was literally copied as the judgment of the court, and only headed with the words, "The court, after hearing both parties, &c." By this judgment Moreau Lislet, the pro-tutor, was ordered to pay to the plaintiff five hundred and thirty-five dollars.

From the proceedings, it is evident that Henry, the curator *ad hoc*, did not consider himself incumbered by the weight of any responsibility.

But the incongruity of such an appointment, is apparent from its necessary consequences. Henry did not claim the five hundred and thirty-five dollars of Moreau Lislet, nor would a payment to Henry have been valid for the same reasons, for which money belonging to absent heirs cannot be paid over to the attorney of absent heirs. *Dewis* vs.

EASTERN DIS.
*April,* 1834.

PSYCHE
*vs.*
PARADOL'
ET AL.,
DUREL,
APPELLANT.

*Courviella,* 4 *Mart. Rep.* 344. To make a valid payment, Moreau Lislet would have been obliged to cause a tutor to be appointed to Psyche. Why was, therefore, a tutor not appointed in the first instance?

Moreover, it is contended by the plaintiff, that the judgment, is a judgment drawn up by consent, without pre-previous judicial investigation, and a curator *ad hoc,* has no more right to enter such a judgment, than an attorney for absent defendants, has a right to confess judgment. *Caldwell* vs. *Townsend,* 5 *N. S.* 309.

When Thierry's account, as executor, was filed, no notice was given in the newspapers, *Old Code,* 179, *p.* 138, which might have apprized the minor's friends of proceedings in which her interests were committed. See, also, the late case in the matter of *Magnon's* estate.

The executor's payments, as alleged in his account, were not binding upon the plaintiff, they having been made without a previous order of court. *Old Code, p.* 179, *art.* 137. *Lafon's Heirs* vs. *his Executors,* 3 *N. S.* 707. The subsequent order or judgment was rendered, when the plaintiff was no party to the proceedings, and had no notice of them. She had a right to contest them, and therefore, to prove that the charges contained in the account, were false and exaggerated, and the evidence which they offered to this effect, ought not to have been rejected.

Wherever legitimate or testamentary heirs have undivided interests in an estate, their rights are to be discussed in the most comprehensive of actions, an action of partition. This is the case, although a testamentary executor may have been appointed. *Old Code, p.* 185, *art.* 155. In this case the plaintiff and Isis Bujac, were residuary legatees, each for one undivided half of the testatrix's estate, and in the action of partition, which ought to have been instituted, a tutor or curator ought to have represented them. *Old Code, page* 191, *art.* 186.

The plaintiff contends that the judgment of the Parish Court, is erroneous in one particular. The plaintiff was entitled, at least, to the value of the services of the slave

Eastern Dis.
April, 1834.

PSYCHE
vs.
PARADOL
ET AL.,
DUREL,
APPELLANT.

Françoise, from the time of the institution of this suit. This right is given to her both by the old and the new code. *Old Code*, p. 360, art. 84. *Louisiana Code*, 3416, and 1 *N. S.* 409. *Richardson* vs. *Debreys and Longer*, 4 *N. S.* 127.

BULLARD, J., delivered the opinion of the court.

The plaintiff sues to recover a negro woman and her increase, bequeathed to her by the will of M. E. de la Hogue, as a specific legacy. She was, at the death of the testatrix, a minor orphan, under the age of puberty. The slave was sold by the executor, and after sundry conveyances, came into the possession of the present defendant, who sets up title under that sale.

It is clear that that the proceeding of the executor in relation to the slave in question, were wholly irregular and void. But the defendant pleads that afterwards, about the year 1818, while the plaintiff was still a minor, and under the age of puberty, the legal representative of the executor, then deceased, had rendered an account of his administration in the Court of Probates contradictorily with the plaintiff, which was finally homologated by that court by judgment, which forms a bar to this action, and has the force of the thing adjudged. By reference to the proceedings in that case, it appears that H. Henry was appointed curator *ad hoc* to the minor, and that a balance in money was found due to the plaintiff, but it is not pretended that she ever received it, or any part of it. This proceeding was conducted on the part of the representative of the executor, by L. Moreau Lislet, who styles himself protector of the minor heirs of Thierry.

It is contended on the contrary, that the plaintiff was not a party to this proceeding; that she was not legally represented by Henry, that no curator *ad hoc* could be appointed to represent a minor under the age of puberty, by the laws then in force; but a tutor alone, regularly appointed, could validly represent her, and that it was the duty of any person

The sale by the executor of property bequeathed as a special legacy, is wholly irregular and void.

having a claim against her, to provoke the appointment of a tutor.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

The Civil Code then in force, does not authorise the appointment of a curator *ad hoc* to represent a minor under the age of puberty. But it is argued by the defendant, that such a proceeding is authorised by the 11th law of the 2nd Title, Partida 3. We are of opinion that adults only are spoken of in that law; that is evidently the opinion of Gregorio Lopez, who in a note, discusses the question whether the judge, when called on to make such appointment, is bound to consult the minor as to the person to be appointed; and he adds, that the practice is to appoint the person suggested by the minor. "*Ut ipse adolescens nominet quem vult ad illam Litem.*"

If the construction of this law were at all doubtful, it would be rendered perfectly clear by reference to the 1st law, 16th title, of the 6th Partida, which treats of the tutorship of minors under the age of puberty. "*Otrosi dezimos, que el quardador deue ser dado para guardar la persona del mozo é sus bienes, é non deue ser puesto por una cosa o un pleyto senalado tan solamente.*" This law expressly forbids the appointment of a special tutor for a particular suit, except in the single case involving a question of freedom, on the part of the minor child.

The legislature has seen fit to introduce into the Louisiana Code and the Code of Practice, a different provision on this subject. The wisdom of that innovation on the former laws of the country, may be well questioned, when we see as in this case, the manner in which the rights of minors may be sacrificed by the appointment of tutors merely *pro formâ*, without any ultimate responsibility.

It is true that the validity of judgments not reversed nor appealed from, cannot be inquired of collaterally by either of the parties. This principle has been recognised by this court in several cases. But in this case, we are of opinion that the plaintiff was not a party, in any legal sense of the word, and that the judgment forms no evidence against her.

EASTERN DIS.
*April*, 1834.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

In the case of *Vignaud* vs. *Bernard*, the court held that a judgment rendered against a person legally incapacitated to defend himself, or expressly privileged from judicial pursuit, ought to be considered as one rendered without parties, and absolutely void. In the case before the court here, · there was neither party, citation, nor *contestatio litis.* 1 *Martin, N. S.* 1.

The plaintiff has called our attention to a bill of exceptions, taken to the refusal of the court to allow a witness to be sworn after the argument had been opened on the part of the plaintiff, and the defendant had commenced his reply. The article 484 of the Code of Practice, forbids any new proof to be introduced without the consent of all parties, after the argument has commenced. There may be cases in which the court might allow it, if under particular circumstances, and, in the exercise of sound discretion; but in this instance, we are not enabled to say that the judge erred.

*After the argument has commenced, new evidence cannot be introduced, except by consent of parties; but cases may occur in which the court might allow it under particular circumstances, and in the exercise of a sound discretion.*

The defendant's warrantor complains that the original defendant waived what he calls a peremptory exception, by which means he has been deprived of the advantage of having the suit dismissed and pleading prescription, if a new suit should be brought. But, by the Code of Practice, the warrantor himself has a right to plead all the exceptions which the original defendant might have done, even those which are personal to him. *Article* 384. He did in fact plead the same exception, to wit: that the residence of the plaintiff was not stated in the petition. Therupon a supplemental petition was filed, setting forth his residence, and the warrantor filed an answer to the merits without taking a bill of exceptions. We cannot, therefore, inquire whether the court erred.

It is therefore ordered, adjudged, and decreed by the court, that the judgment of the Parish Court be affirmed with costs.

EASTERN DIS.
*April*, 1834.

PSYCHE
*vs.*
PARADOL
ET AL.,
DUREL,
APPELLANT.

*J. Seghers*, for warrantor and appellant, applied for a rehearing on the following grounds:

A final judgment having been thus rendered on the peremptory exception, no bill of exceptions could have been taken thereto, for the inferior judge would not have allowed it; the constant practice of the lower tribunals, being never to permit a bill of exceptions to be taken, except when the matter cannot appear in any other shape before the Supreme Court. This is the very maxim laid down by philosophers, that a multiplicity of beings ought to be avoided. *Entia non sunt multiplicanda sine necessitate.*

*Durel*, the warrantor, having been ordered to answer to the merits, by the above judgment of the 26th March, 1833, did file his answer on the 6th of April, 1833, *expressly reserving to himself the benefit of his peremptory exception.*

In order that the trial of this case might be no longer postponed, Durel answered not only to the plaintiff's original petition, and to the defendant's call in warranty, but even to the new matters pleaded in the plaintiff's supplemental petition, which had never been served on him; but, as already stated, he did not do so, without expressly reserving to himself, for the appeal, the benefit of his peremptory exception, which had been overruled by the interlocutory judgment of the 26th of March, just mentioned.

He was ruled to answer to the merits, and did so without prejudice to his rights.

In the case of *Muse* vs. *Curtis*, 8 *Martin's Reports, p.* 721, a motion for a new trial was overruled by the court, and no bill of exceptions was taken; which was contended to be unnecessary, as this court was bound to notice it, on the appeal from the final judgment, without having their attention thereto directed by a bill of exceptions. "We are of opinion," says the Supreme Court, "that this is correct."

"At common law," says *Phillips on Evidence*, 214, "a writ of error could not be brought for any error in law, *which did not appear on the record*; and, therefore, when the plaintiff or defendent alleged any thing *ore tenus*, which was overruled

by the judge, the party aggrieved had no redress." To remedy this defect, bills of exception were introduced by *stat.* 13, *Ed.* 1, *sec.* 31. Now, a judgment being a matter which appears on record, no bill of exceptions can, of course, be required.

BULLARD, J., delivered the opinion of the court.

The warrantor has prayed for a rehearing on the question, whether the exception taken to the petition that it did not set forth the place of residence of the plaintiff, was a peremptory exception which ought to have been sustained, and consequently the suit dismissed. Our attention is called to an expression in the opinion heretofore delivered, from which it might be inferred that we thought a bill of exceptions necessary, whenever the inferior courts overrule an exception in writing. Such was not the meaning of the court, and the expression was used inadvertently, probably under the impression that the proceeding took place during the trial.

We think the court did not err in allowing an amendment and a supplemental petition to be filed. The exception does not, in our opinion, go to extinguish the action; nor does this appear to us one of those nullities of form, for which a suit ought necessarily to be dismissed.

The rehearing is refused.