ST. PAUL, J.
 

 On January 6, 1909, plaintiff married defendant, and after a somewhat extended bridal tour, on which plaintiff spent practically all his savings up to that time, they finally settled in Haynesville, Claiborne parish. There plaintiff found employment as a railroad section foreman at ¿ salary of $50 per month, to w.hich he was able to add $15 or $20 more, as commissions on supplies furnished to his laborers, for which he stood guaranty. He never at any time earned more, except for .a short while when his salary was $57.50, and his commissions as aforesaid. This is his own testimony.
 

 In February, 1910, defendant paid a visit to her father, an aged widower with this one daughter and four grown sons, then living at Mantee, Miss. Her testimony is (and it is corroborated by that of her brother, Earl Carridine) that her father had just sold some lands, and gave her $200 with which to buy a home for herself. She testifies that she put this money in the Planters’ Bank of Haynes-ville, and on March 19, 1910, she purchased in her own name, with the consent and concurrence of her husband, a small tract of land (40 acres) in the outskirts of Haynes-ville, for the sum of $200 cash. The property was paid for by two checks drawn on the account which stood in her name in the Planters’ Bank; one check being drawn by herself, and the other by her husband, who had the right to sign her name. A small house'was built upon it,
 
 probably
 
 paid for with the small savings of the couple (though this is not shown).
 

 In-, 1916, plaintiff took his wife and three children to her father’s home, and
 
 planted,
 
 them there. Then he betook himself to parts unknown; in short he
 
 abandoned
 
 them. He wrote to his wife
 
 once,
 
 in January, 1917, from Galena, Kan., about “your (her) taxes” being paid, and about some things he had sent to the children from Muskogee, Okl., signing “Yours truly.” The next time she heard was on April 13, 1921 [notice the date] from Atoka, Okl., as follows: “Are you willing to deed me one-fourth of 40 acres, which would be 10 acres, at Haynesville, La. You know I bought it with my own money and borrowed some from Sid. Bridgeman. It' will be better if we can compromise some way to
 
 *939
 
 keep- it out of court. .Hoping to hear from you soon, I beg to remain
 
 your Husband”
 
 (italics ours). Both letters are addressed to
 
 ‘Wear Ada.”
 
 But “D'ear Ada,” under the cir-circumstances, was
 
 not
 
 willing to deed
 
 “10 acres,”
 
 or any other acres, to
 
 “your (her) Husband."
 
 Hence this suit.
 

 I.
 

 Plaintiff alleges that he is a resident of the state of Oklahoma and the owner of an undivided half interest in the 40 acres aforesaid; that “Mrs. Ada Miller, a resident of Mantee, state of Mississippi,” owns the other one-half interest, hut is in possession thereof and claiming the whole as her own; that petitioner and the said Mrs. Ada Miller,
 
 formerly husband and wife
 
 (italics ours), married in Mississippi January 6, 1909, and located in Haynesville that same year; that “the community” existing between petitioner and his said wife acquired the said property by purchase on March 19, 1910, paying for same with funds earned during the existence of, and belonging to, said community, taking the title to said property in the name of Mrs. R. L. Miller, but owning said property at all times and never having parted with title thereto.
 

 He alleges further, that “petitioner obtáined
 
 a decree of absolute divorce
 
 against defendant on February 27, 1920 [notice the daté) in the district court of Oklahoma county, Okl., * * * which decree became final six months thereafter,” and by operation of law “dissolved the community of acquits and gains theretofore existing between petitioner' and defendant vesting in each of them a one-half undivided interest in the above described property.”
 

 He further alleged that he is unwilling to hold said property in common with defendant, and he prays to be recognized as owner of an undivided half interest, and for a partition thereof in kind.
 

 II.
 

 For answer thereto defendant admitted the marriage and the existence of a community, but claimed the sole ownership of the property, denied that said property was acquired by the community, but, on the contrary, “avers that she
 
 individually
 
 purchased said property and paid for same with her own separate and paraphernal funds under her own administration, taking title to same in her own name—all with the full knowledge and consent' of her husband, R. L. Miller, the plaintiff in this action.”
 

 In answer to the article of the petition setting up the
 
 divorce,
 
 defendant “avers that she has no knowledge of the facts alleged in said article” [plaintiff having failed to make mention thereof in his letter of April 13,1921, signed “your Husband,” quoted above in full]; she then sets forth plaintiff’s abandonment of herself and children and his failure to provide for or communicate with them; and she “therefore asks for full and strict proof of the allegations of this article.” Wherefore she denied that plaintiff owns an undivided interest in said property, and she .prayed that his demand be rejected, and for trial by jury.
 

 III.
 

 The case was tried before a jury. Plaintiff offered the title deed to the property, exhibited the decree of divorce, and rested his case. Whereupon defendant called her witnesses, including plaintiff (on cross-examination), and the case went to the jury under a charge from the trial judge, the substance of which is contained in the following excerpt therefrom, to wit:
 

 “Community property is the property made and accumulated by the husband and wife during the existence of the community. Separate property is that which is brought into the community, or to the marriage, by either one of the spouses. Any property that is donated specially to one or the other, is separate property. Property that is acquired with the separate funds of the wife or the husband, belongs to the separate
 
 *941
 
 estate of wife or husband; as the case may be. * * * If it was purchased with community funds then the property would fall into the community regardless of whose name it was purchased in.”
 

 And. thereupon the jury returned an unanimous verdict in favor of defendant, rejecting plaintiff’s demand.
 

 IV.
 

 The charge given to the jury by the trial judge seems to us sound in law and sufficient for the purposes of this ease. At any rate plaintiff neither excepted to any part thereof nor asked for any further or special charges (O. P. arts. 488, 517; Bank v. McKellar, 11 So. 592, 44 La. Ann. 940, 944, 945; Wimbish v. Hamilton, 16 So. 856, 47 La. Ann. 246, 251); thus letting the case go to the jury as a straight out question of fact for them to decide; to wit, whether the property in controversy was purchased with funds belonging to the community or with separate funds belonging to the wife. Por—
 

 “When she [a married woman] buys property in her own name, it is not necessary to declare in the deed that it is bought with her separate funds. She may assert and prove the fact, whenever it is questioned.” Kittredge v. Grau, on Rehearing, 103 So. 723, 728,158 La. 154,169 in find.
 

 In this case the deed did not recite that the property was purchased with separate funds of the wife; but that was unnecessary, as we have just said.
 

 And we think the jury correctly found the
 
 fact
 
 to be that the property was purchased with her separate funds.
 

 We have already stated the substance of the testimony given by the defendant (and her brother) as .to the origin of the funds with which the property was purchased, her testimony as to
 
 where
 
 the funds were put, and the undisputed fact that funds were shortly afterwards withdrawn therefrom for the purchase of the property.
 

 In addition to this, some half dozen or more disinterested witnesses swear that on various occasions plaintiff had told them that the property belonged to his wife, and had stated that she obtained the funds with which it was purchased from her father, who himself had received them from the sale of some lands.
 

 And that suffices for the case
 
 as it went to the jury.
 

 Plaintiff complains, however, that the trial judge refused to grant him a new trial, applied for on the ground of newly discovered evidence. But, without going into details, it suffices to say that this newly discovered evidence would not change our opinion as to the facts, nor we believe, that of a jury. And—
 

 “A [civil] case will not be remanded for the admission of evidence, even though improperly excluded, when the evidence is such, that even if admitted, the result would
 
 not be
 
 changed.” Miller v. Lafontaine, 8 Orleans App. 162; and Tessier’s Digest (Orleans App.) p. 22, No. 5, citing Rhea v. Thomas Motor Co. and Lewis v. Morgan’s La. & Tex. R. R. Co.
 

 Nor will such a case be remanded for the reception of new evidence, where the motion to do so is void of all equitable considerations. Keen & Woolf v. Caldwell et al., 108 So. 318, 161 La. -, our No. 25767, just decided.
 

 And this case presents no equitable con-, siderations whatever on plaintiff’s side. It was to bring out this fact that we recited hereinabove certain details not otherwise pertinent.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.