No. 2526

Second Circuit

GERNER v. BRADFORD-HUTCHINSON LBR. CO., LTD.

(May 22, 1928.  Opinion and Decree.)

(*Syllabus by the Editor.*)

1.  **Louisiana Digest—Evidence—Par. 52 53.**

The burden of proof is on the plaintiff to make out his case.

2.  **Louisiana Digest—Evidence—Par. 52, 53, 60.**

Where there is no evidence in the record that would form a basis on which to compute the alleged loss of crops of plaintiff, plaintiff has failed to make out his case.

3.  **Louisiana Digest—Appeal—Par. 625.**

The finding of trial court on matters of fact, where clearly correct, is affirmed.

Appeal from the Tenth Judicial District Court, Parish of Natchitoches. Hon. John F. Stephens, Judge.

Action by Sidney Gerner against Bradford-Hutchison Lumber Company, Limited.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Phanor Breazeale, of Natchitoches, attorney for plaintiff, appellant.

Rusca and Cunningham, of Natchitoches, attorney for defendant, appellee.

ODOM, J.  Plaintiff alleges that he owns a farm in Natchitoches parish through which the defendant's tram or log road ran and that in the year 1924 the defendant, by operating a log loader on said tram, tore down and destroyed the cattle-guards or gates where said road entered his field, and that cattle and hogs got into his field and destroyed his cotton, corn and potatoes.  He itemizes the damage as follows:

Value of cotton destroyed................$730.00
One hundred barrels of corn .......... 125.00
One hundred and fifty bushels of
    potatoes ....................................... 150.00

He also alleges that defendant's employees permitted fire to destroy his timber to the extent of $250.00, but he has abandoned that claim.

Defendant denied any indebtedness to plaintiff, and alleged that whatever damage had been done to plaintiff's crops by stock on account of the destruction of the cattle-guards by its log loader had been adjusted and paid.

The lower court found for defendant and dismissed plaintiff's suit.  He appealed.

OPINION.

Only questions of fact are involved, and we think the court's finding for defendant was correct.

Plaintiff carried the burden of making out his case.  He failed to discharge that burden.

Defendant's tram road ran through plaintiff's field and at three or four places where the road entered the field cattle-gaps or guards were built.  These gaps were wide enough to accommodate an ordinary log car but not wide enough for a log loader.  In carrying the log loader over the track the guards were torn down,

and the evidence establishes that on account of the destruction of these guards, stock got into plaintiff's field and did some damage to his crops. Garner, the plaintiff, made complaint and defendant sent a man to look into the matter. He found that some damage had been done by the stock and offered to settle. The amount offered was not satisfactory to Garner. Whereupon it was agreed that two men should be selected, one by Garner and the other by defendant, to arbitrate and fix the amount of damage. The parties selected went to plaintiff's field on July 5, 1924, and on investigation fixed the damage at $15.00. Defendant gave its check for the amount, which was accepted by Garner, although, he says, he thought at the time the amount of the award was not sufficient, but he accepted it.

It is not disputed that the acceptance of this award cut plaintiff off from claiming any additional amount for damage occurring prior to the date of settlement, July 5, 1924, but plaintiff contends that later on, between July 20th and July 28th, 1924, his fence was again torn down by defendant and the stock got into his field and did further damage.

Arnold, the locomotive engineer, says the fence was torn down on or about June 20, 1924, and that the fence was not damaged after that. Frank Brown, the track foreman, says he took up the track through plaintiff's field about June 27, 1924.

The testimony of these witnesses bears out defendant's contention that whatever damage was done to plaintiff's crops was done prior to July 5, 1924, when the settlement was made.

On the other hand, plaintiff called E. A. Powell, J. W. Ramsey and J. P. Barron, all of whom were asked to go to the plaintiff's field and estimate the damage. Powell says he went on July 24th, and the other two say they went between July 20th and July 28th. They found that stock had depredated upon plaintiff's crops, but they did not know when the fence was torn down nor when the stock first got into the field. It seems that there was cattle in the field when they were there but they could not say where they got in.

Plaintiff relies upon the testimony of these witnesses to show that the crops were damaged subsequent to the date on which the settlement was made.

There is testimony that after the fence was torn down first there was another entrance made into the field, but nothing to show that stock got in at that place.

Arnold and Brown are the only witnesses who were in position to state when the fence was torn down and they place the date prior to July 5th. Plaintiff says the fence was damaged by the loader, and it is shown to our satisfaction that the loader did not go through the field after June 20th. Stock got into the field and did some damage about that date, but that damage was paid.

Plaintiff objected to the introduction of any evidence except as to the quantum of damage, on the ground that defendant plead payment, which plea admitted the damage. Defendant did not, however, admit that any damage was done except that for which it had paid.

Plaintiff's claim is for damage done subsequent to the settlement, and that claim was denied.

The court opened the door and let in all the evidence offered on both sides, and we have read and considered all of it, and our conclusion is that even if it be admitted that stock did get into plaintiff's field after July 5th, when the settlement

was made, plaintiff failed to make out his case.

It is not shown that the cattle which went into plaintiff's field, at least after June 20th, went in through the cattle-gaps alleged to have been torn down by defendant. Plaintiff's fence was old, down in places, and cattle and hogs could have gone into the field at almost any point and probably did so. One of defendant's witnesses was asked why stock did not go into the field prior to July if the fence was not sufficient to turn them, and he replied that it was a dry year, that the grass in the woods died and they then sought the fields for food.

In the second place, the testimony is so conflicting and unsatisfactory as to the question of damage done that the court is utterly unable to fix any amount. Some of the witnesses say that plaintiff did not cultivate his crops, and that under weather conditions that prevailed that season he would probably have made but little if any crop had the stock not bothered it. It did not rain in that section from June 2nd to August 7th and the crops "burned up," especially where not properly cultivated. The majority of the witnesses thought plaintiff would have made something, but they could only guess as to the quantity of either cotton, corn or potatoes.

At the time the crops are alleged to have been destroyed, nothing had matured, there was nothing made. As to what would have been made that year, is a matter of speculation. No one can tell in July how much cotton an acre will produce. That depends on the land, the cultivation and the weather.

Plaintiff's land is a fair average, for that section, but there is testimony that his crop was badly neglected. It did not rain there from June 2nd to August 7th and for that reason all crops were prac-

tically ruined. Under such conditions, it is impossible for the court to say what plaintiff would have realized from his crops.

Then, too, there is no testimony to show what additional labor and expense would have been necessary to finish cultivation, gathering and marketing the crops, if any had been produced.

The measure of damage for the destruction of growing crops is the value thereof at the time destroyed. We so held in the case of Williams vs. Windham, 3 La. App. 127, in which case we cited authorities supporting that view. In that case we held that plaintiff did establish the value of his crops at the time they were destroyed by showing that they had advanced to a certain stage and that others in the same community did that year obtain certain results from crops of the same kind on land of the same character as plaintiff's and similarly cultivated. The plaintiff in that case had completed cultivation, his corn was in silk and tossel, and his melons were formed. Weather conditions were good through the season. Others similarly situated made good crops, from which we concluded that plaintiff's crops had a certain value when destroyed.

But, in the case at bar, we are unable to fix any value. None of the witnesses attempted to do so. Some of the witnesses are farmers and got certain results that year. But it is not shown that their land was of the same nature and fertility. The dates on which their crops were planted are not shown, nor is it shown that plaintiff had cultivated his crop properly up to the time he alleges it was destroyed.

There is nothing to serve as a basis for judgment.

Judgment affirmed with costs.