No. 3674

Second Circuit

L. WEMPLE COMPANY, INC., v. FELGER LUMBER COMPANY, INC., ET AL.

(January 31, 1930. Opinion and Decree.)
(March 24, 1930. Rehearing Refused.)

Bruton T. Dawkins and W. C. Roberts, of Alexandria, attorneys for plaintiff, appellant.

White, Holloman & White, of Alexandria, attorneys for defendants, appellees.

WEBB, J. This action was brought to recover judgment for $729.06, a balance alleged to be due on the price of timber alleged to have been cut and removed by defendant from lands belonging to plaintiff, and plaintiff appeals from a judgment rejecting its demands.

Plaintiff owned timbered lands and defendant operated a sawmill, and they had dealt with each other for some time with reference to the timber. From about July, 1925, to August, 1926, defendant cut and removed timber from the lands, and thereafter, from August, 1926, until November, 1927, the timber was cut by plaintiff and the logs delivered to defendant.

During the period that defendant cut and removed the timber, there was taken from the lands approximately 490,840 feet of cypress, ash, and other hardwood logs, for which defendant paid at the rate of $12.50 per 1,000 feet for the cypress and ash and $7 per 1,000 feet for the oak and other hardwoods, and the record shows that during the period plaintiff cut the timber and delivered the logs to defendant, from August, 1926, to November, 1927, there was approximately 830,103 feet accepted by defendant, and during the period the logs were delivered by plaintiff, defendant, at short intervals, rendered statements to plaintiff, showing the species, quality, and quantity of logs accepted and credits for same, and remitted the amount due, as shown by the statements.

The statements rendered from August, 1926, to June, 1927, show that there was approximately 578,830 feet of cypress, ash,

oak, and other hardwood logs accepted, of which 667 feet of the cypress and 3,545 feet of the ash was classed as No. 2, for which credit was given at the rate of $3 per 1,000 feet, and for the balance credit was given at the rate of $12.50 per 1,000 feet for the cypress and ash and $7 per 1,000 feet for the oak and other hardwoods, and additional credits were allowed for hauling, etc., at the rate of $12.50 per 1;000 feet for the cypress and ash and $11.50 for 1,000 feet for the oak and other hardwoods, and the statements rendered from June, 1927, to November, 1927, show that there was 251,253 feet accepted, and that 74,913 feet of the cypress and ash and 4,089 feet of the oak and other hardwoods was classed as No. 2, and credits allowed as above.

There is not any amount claimed to be due on the timber cut or logs removed from the lands by defendant during the period from July, 1925, to August, 1926, or for the logs delivered by plaintiff during the period from August, 1926, to June, 1927, during which latter period the president of plaintiff company was in actual charge of its affairs and handled the statements rendered and remittances made by defendant.

The president of plaintiff company, however, became ill in June, 1927, and thereafter, until about November 1, 1927, the timber was cut and logs delivered by employees of plaintiff, and the statements and remittances were handled by the secretary of plaintiff company, and when the president of plaintiff company recovered from his illness and resumed charge of plaintiff's affairs he complained and protested against the right of defendant to have classified the logs and to pay for those classed as No. 2 at the rate of $3 per 1,000 feet, contending that under the agreement of the parties defendant was bound to pay for all logs accepted by it at the rate of $12.50 per 1,000 feet for cypress and ash and $7 per 1,000 feet for oak and other hardwoods, and the amount claimed here is the difference between the amount paid by defendant for the logs classed as No. 2 and the amount which plaintiff contends should have been paid under the agreement of the parties.

There were, however, as indicated, several agreements between the parties. First, there was a written agreement, of date March 27, 1925, which purports to have been a contract for the sale of the merchantable ash and cypress timber on sections 8 and 9 at the price of $12.50 per 1,000 feet, log scale, to be paid at the end of each month, as the timber was cut and the logs scaled; and, second, there was a verbal agreement, which was made in February, 1926, relative to the oak and other hardwoods on sections 8 and 9, and also relative to the cypress, ash, oak, and other hardwoods on sections 6 and 7 and other lands, under which it is conceded defendant cut and removed timber from the lands until August, 1926, paying for the logs at the rate of $12.50 for cypress and ash and $7 for oak, etc.

In August, 1926, there was another verbal agreement, under which plaintiff began cutting the timber from the lands and delivering the logs, and about the time plaintiff began delivering the logs, in August or September, 1926, there was another verbal agreement relative to grading the logs, and thereafter the statements rendered by defendant show that of the logs accepted by defendant in September, October, November, and December, 1926, and January, 1927, there was, as previously stated, 667 feet of cypress and 3,545 feet of ash classed as No. 2 and paid for at the rate of $3 per 1,000 feet, and of the logs accepted after June, 1927, or in July, August, September,

October, and November, 1927, there was, as stated, 74,913 feet of cypress and ash and 4,089 feet of oak and other hardwoods classed as No. 2, and paid for at the rate of $3 per 1,000 feet, and the question presented is whether or not, under the agreement made by the parties in August or September, 1925, after plaintiff began to cut the timber and deliver the logs, defendant was given the right to classify the logs and to take those classed as No. 2 at $3 per 1,000 feet.

The president of plaintiff company and one of the representatives of defendant company were the only witnesses who had any knowledge of the various agreements of the parties; and while they apparently disagree in some respects as to all of the agreements, their version of the agreement made in August or September, 1927, after plaintiff began to cut the timber and deliver the logs to defendant, is especially conflicting.

Relative to the last agreement, the president of plaintiff company states that, after it began to deliver the logs, the representative of defendant company complained of the ash logs cut from sections 6 and 7, and as we gather from his statement, it was agreed that as to the ash logs taken from those sections defendant could take those classed as No. 2 at the rate of $3 per 1,000 feet until such time as the right should be withdrawn, which the president of plaintiff company states was withdrawn in January, 1927, but the representative of defendant company states that the agreement related to all of the logs delivered by plaintiff, and he refers to the statements rendered by defendant company in September, October, November, and December, 1926, and January, 1927, which showed that cypress logs as well as ash were classified, and those classified as No. 2 paid for at the rate of $3 per 1,000 feet, as corroborating his version of the agreement.

The president of plaintiff company states, however, that he had protested against the classification of the cypress logs, but that, as the amount involved was small, he had acquiesced and accepted payment on the basis of $3 per 1,000 feet, although, as we gather from his evidence, the persistent action of defendant company in classifying the cypress logs was one of the reasons for withdrawing the right to classify the ash logs. However, the representative of defendant company denies that there was any protest whatsoever made.

There was not any evidence introduced tending to show that the logs classed by defendant company as No. 2 were not of that quality, or that such logs were worth more than $3 per 1,000 feet, and while it must be conceded that the fact that other timber than ash was classified as No. 2, with the knowledge of plaintiff company, and payment accepted for same at the rate of $3 per 1,000 feet, corroborates the version of the agreement as stated by the representative of defendant company, it is urged that such corroboration was not sufficient, on the theory that the agreement between the parties was for the sale of timber, and that defendant company not only carried the burden to establish a modification of the agreement, but that any modification of the agreement should be conclusively established.

In support of that position the agreements of March, 1925, and February, 1926, are referred to as contracts for the sale of merchantable timber, and as having fixed the price of the cypress and ash at $12.50 per 1,000 feet, and oak and other hardwoods at $7 per 1,000 feet, and the agreement of

August, 1926, is referred to as merely supplementary of the former agreements.

Considering the agreements of March, 1925, and February, 1926, from that point of view, it would appear that defendant company would have to bear the expense of cutting and hauling the timber, and we assume that such was the case where it cut and hauled the timber; but it is conceded that after the agreement of August, 1926, when plaintiff cut the timber and delivered the logs to defendant company, the expense was borne by plaintiff company, and that defendant company was reimbursed only as to the logs accepted by defendant company, and, further, that whatever may have been the intention or rights of the parties under the agreements of March, 1925, and February, 1926, it is conceded that defendant company selected the timber which it cut, and that it did not take all of the timber cut by it, and also that it "docked" or sawed off portions of the logs which were of inferior quality, paying only for that which it took, and that after the agreement of August, 1926, when plaintiff company cut the timber and delivered the logs, defendant company had the right to refuse any that it saw fit to reject, we are of the opinion that the parties never considered the agreements of March, 1925, and February, 1926, as other than for the sale and purchase of logs, and that the agreement of August, 1926, was regarded by them as a substitute for the former agreements.

There was not anything unreasonable in the version of the representative of defendant company that the agreement related to all of the logs delivered by plaintiff company, and we are of the opinion that it having been shown that defendant had classified the logs with the knowledge of plaintiff company, and that payment was accepted in accordance with the version of the agreement given by the representative of defendant company, was sufficient to establish the agreement and right of defendant company to classify the logs and take those classed as No. 2 at $3 per 1,000 feet, and that plaintiff company's demands were properly rejected.

On conclusion of the trial, on March 12, 1929, the cause was passed for argument, and on May 20, 1929, plaintiff moved to reopen the case for further evidence, and the motion was refused, and appellant urges that the court erred, and prays that the cause be remanded.

In the motion to reopen the cause, plaintiff company alleged that it had the evidence which it sought to have introduced at the time of the trial, but that it did not realize the evidentiary value of the evidence until after the president of plaintiff company had read the testimony of the officers of defendant company, and that the evidence would contradict the evidence of the officers of defendant company, and support the testimony of the president of plaintiff company, as to the agreement for classifying the logs.

It is conceded that the question of reopening the case was within the discretion of the court (Sterling vs. Carruthers, 7 Mart. (N. S.) 55; Psyche vs. Paradol, 6 La. 366; Le Blanc vs. Nolan, 2 La. Ann. 223; Roberts vs. La. Ry. & Nav. Co., 132 La. 446, 61 So. 522, Ann. Cas. 1914D, 1207; Succession of Lefort, 139 La. 51, 71 So. 215, Ann. Cas. 1917E 769; Miller vs. Miller, 160 La. 936, 107 So. 702), and as the motion shows on its face that the evidence sought to be introduced was in plaintiff company's possession at the time of the trial, and is merely cumulative, we cannot say that the ruling was manifestly erroneous.

The judgment is therefore affirmed.