Plaintiff, Lorenzo Ingargiola, operates a truck farm in the Parish of St. Bernard. In the fall of 1941, he had on his farm a crop of growing cabbages and a large supply of young cabbage plants which were ready for transplanting.
Defendant, Frank Schnell, a resident of the City of New Orleans, during that same period owned a herd of cattle which he kept on property adjacent to plaintiff's farm.
After the foregoing statements, it is almost unnecessary to say that this suit is based on the alleged destruction by defendant's cattle of large quantities of plaintiff's cabbages and plants. It is the contention of plaintiff that there is liability in defendant for the resulting loss because in the Parish of St. Bernard there is an ordinance providing that cattle shall not be permitted to roam at large. Defendant asserts that the damage, if there was any, was not caused by his cattle, and he maintains further that even if his cattle did cause it, he is not responsible therefor for the reason that plaintiff, himself, was negligent, or, at least contributorily negligent in that he failed to fence the front part of his farm as is required by another ordinance of the parish.
There was judgment for plaintiff for $450 and defendant has appealed.
Plaintiff has answered the appeal praying for an increase in the amount of the judgment.
The ordinance on which plaintiff relies was adopted on January 4, 1876, has been effective and in force ever since its adoption, and reads as follows: "Resolved, That no cattle is allowed to roam at large without a keeper, as the syndic be and he is hereby instructed to post up notices to that effect in all conspicuous places."
The ordinance pointed to by defendant was adopted on September 5, 1881. It also is said to have been in force since its adoption. We now set it forth
"Be it resolved, That hereafter all land owners whose lands front on the public road, in order to protect their property from the intrusion of cattle or other animals roaming or driven, shall put up and *Page 283 
keep in good order and condition a four line wire or three-bar wooden fence along said public road, and the compliance of any land owner with the said ordinance shall alone be a requisite to a claim in damage.
"Be it further resolved, That all laws or parts of laws in conflict herewith are hereby repealed."
In Louisiana there is no general statute prohibiting owners from permitting their cattle to roam at large, and counsel agree that it is well settled that where there is no such general law but a local ordinance seeks to accomplish the same effect, an owner of cattle is responsible for damage caused to growing crops, etc. See Williams v. Windham, 3 La.App. 127. And counsel also agree that in spite of this, and even if there is such a local ordinance, where there is some other ordinance such as there is here, requiring the owner to himself fence his property, or any part of it, then failure to comply constitutes contributory negligence on his part and prevents recovery for loss caused by or contributed to by his own failure. Counsel for plaintiff concedes that plaintiff has not erected and maintained along the public road the fence which is required by the ordinance of 1881, and he concedes too that there could be no recovery if the cattle which caused the damage had entered plaintiff's property from the public road. But he maintains that the record shows that the cattle entered plaintiff's property not from the front, which plaintiff should have fenced, but by merely walking across the division line which defendant should have protected. And we agree with counsel for plaintiff, that if the cattle did not enter the property from the public road but did so by merely meandering beyond the rear end of the side fence, which did not extend to the rear end of the property, the fact that the owner of the cabbages had not erected a front fence had no causal connection with the loss and that his failure in this regard should not deprive him of his right to recover.
It is obvious that the purpose of the framers of the ordinance of 1881 in requiring fences "along said public road" was to recognize the right of owners of cattle to permit them to roam at large on the roads or to permit owners to drive cattle along the roads without being subjected to liability every time any animal might stray from the road and cause damage to some nearby crop.
The record by a considerable preponderance shows that the owner of the cattle here had, until a short time before the occurrence, confined his animals on another piece of property a short distance away, and that a few days before the first depredation was committed, had had them driven to the land adjoining that of plaintiff. Though the employee of defendant who had charge of these cattle and whose duty it was to erect and maintain the necessary fences, states that this division fence was complete from the front to the waterway at the rear, so that cattle could not possibly pass from one side to the other, the evidence to the contrary overwhelms that of this particular witness and shows plainly that the fence extended back only for about half a mile and that at the end of the fence there were several rolls of barbed wire, indicating that it was the intention to later on extend the fence all the way back.
We think it unnecessary to enter into a detailed discussion of the testimony and merely repeat that that on behalf of plaintiff overwhelmingly preponderates. Evidently our brother of the district court agreed with us in this regard.
We come now to a consideration of the evidence concerning the extent of the damage sustained by plaintiff's growing cabbages and cabbage plants. At the outset we notice that after counsel for both parties had announced that all evidence had been adduced, counsel for plaintiff, realizing that he had failed to offer certain evidence showing the sale price of cabbages at the time at which those destroyed would have made their appearance on the market, obtained from the district judge an ex parte order reopening the case for the submission of such additional evidence.
Counsel for defendant objected to the reopening of the case, his objection was overruled and he has renewed it here, contending that because of the effect of Article 484 of our Code of Practice the court was without right to permit the introduction of additional evidence since there had not been obtained consent of all counsel. This article reads as follows: "Arguments of counsel — Consent of parties to hearing witnesses. — After all incidental questions shall have been decided, and both parties have produced their respective *Page 284 
evidence, the argument commences; no witness then can be heard, nor proof introduced except with the consent of all the parties."
It was held as long ago as in the year 1852, that where, in the exercise of a sound discretion, the nisi prius judge, after both parties have announced the completion of their submission of evidence, permits reopening for some special testimony, his discretion will not be interfered with in the absence of a showing of abuse. In that case, Sterling v. Carruthers, 7 Mart., N.S., 55, the court said: "Nor do we think the court erred in permitting the plaintiff to examine a witness after the defendants had closed their testimony. The general rule is certainly opposed to such indulgence being extended; but when it becomes necessary to explain or rebut testimony, it is within the discretion and power of the court to permit either of the parties to do so. The [58] 484th article of the code of practice does not appear to us opposed to this doctrine; the prohibition there spoken of, is in relation to testimony offered after the argument has commenced."
It is true that in most of the cases which have been decided since then the appellate court has upheld the refusal of the district judge to permit reopening, but even in those cases the decisions have been unanimously to the effect that the trial court has discretion in the matter. And there are some cases in which the reopening was permitted, and in these also the appellate court recognized that the matter should be left to the discretion of the trial court. See L. Wemple Company, Inc., v. Felger Lumber Co., Inc., et al., 12 La.App. 612, 125 So. 781; Psyche v. Paradol, 6 La. 366; Le Blanc v. Nolan, 2 La.Ann. 223; Roberts v. Louisiana Ry. Nav. Co., 132 La. 446, 61 So. 522, Ann.Cas.1914D, 1207; Succession of Lefort, 139 La. 51, 71 So. 215, Ann.Cas.1917E, 769; Miller v. Miller, 160 La. 936,107 So. 702.
In Psyche v. Paradol, 6 La. 366, the Supreme Court said: "* * * The article 484 of the Code of Practice, forbids any new proof to be introduced without the consent of all parties, after the argument has commenced. There may be cases in which the court might allow it, if under particular circumstances, and, in the exercise of sound discretion; but in this instance, we are not enabled to say that the judge erred."
When we come to consider the value of the destroyed plants, we find that plaintiff's evidence shows rather conclusively that almost 8,000 young cabbages were destroyed. The evidence shows that these probably would have been worth between 6 and 10 cents each, had they reached maturity during the early part of January. They were destroyed during the middle of November. It is obvious that at that time their value was not so great as it would have been two months later. In fact, these cabbages are shown to have been of a variety which required eighty-four days to mature, so that they had not reached even the half-way mark. In addition, some 30,000 young cabbage plants, not yet transplanted, are shown to have been destroyed, and there is conflicting evidence concerning the value of these plants. Defendant maintains that they could have been bought for about $1 a thousand, whereas plaintiff has introduced much evidence to show that his plants were carefully selected and were worth considerably more than $1 per thousand.
Counsel for defendant also objected to the introduction of the new evidence on the ground that the pleadings did not lay the foundation for this additional evidence. The suit was filed on November 26, 1941, and this new evidence concerned the price of cabbages during January, 1942. Counsel for defendant vehemently argued that evidence concerning the price of cabbages in January, 1942, should be held to be inadmissible in a suit involving the value of cabbage plants destroyed in November, 1941. We think that this objection was properly overruled. While it is true that the plants never reached maturity, and would not have reached maturity until January, 1942, we think that their value at the time of their destruction can best be determined by an ascertainment of what would have been their value had they reached maturity. Of course, it would not be proper to allow a recovery based on the full value which they would have had in 1942; nevertheless, that value must be taken into consideration. The law is well settled that on a question involving prospective damage, the articles destroyed must be valued as of the time of the destruction: "* * * The measure of damages where a growing crop is destroyed through the tort of another person is the value of the crop at the time it is destroyed; not the value it might have *Page 285 
had if suffered to mature and be gathered. * * *" Boudreaux v. Thibodeaux et al., 149 La. 400, 89 So. 250. See also Williams v. Windham, supra; and Gerner v. Bradford-Hutchinson Lbr. Co., Ltd., 8 La.App. 370.
We realize the impossibility of arriving at a figure which is absolutely accurate in a case of this kind, which involves purely prospective damage, and reach the conclusion that after a careful check of all of the various estimates, it would be folly to substitute our opinion for that of the district judge, even if it were different. We think that in view of all of the circumstances, and considering all of the testimony, the award made by him is substantially accurate.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.