## No. 13,724.

### MARIE HEBERT vs. LOUISIANA WESTERN RAILROAD.

#### SYLLABUS.

The engineer of a train running on schedule time, on its own right of way, in the open prairie away from any town or crossing, is not called upon to immediately slacken its speed, from the simple fact that a trespasser, sitting upon the ties, does not at once rise and change his position on receiving warning of the approach of the train by the ringing of the bell, and the blowing of the whistle, duly and properly given.

The engineer has the right to assume that he will ultimately obey the signals and is not held to presume, in the absence of some special circumstance, that the inaction of the trespasser is due to some physical cause or infirmity which prevents his leaving the ties.

A PPEAL from the Fifteenth Judicial District, Parish of Calcasieu— *Miller, J.*

---

*Paul A. Sompayrac* for Plaintiff, Appellant.

---

*Denegre, Blair & Denegre* and *Pujo & Moss,* for Defendant, Appellee.

---

The opinion of the court was delivered by NICHOLLS, C. J.

#### STATEMENT OF THE CASE.

NICHOLLS, C. J. The plaintiff, widow of Vilier Hebert, seeks judgment for ten thousand dollars against the defendant company for damages caused her by the killing of her husband, alleged to have been caused by the fault of the said company.

She alleges that, on February 10th, 1900, her said husband was sitting on the track, or right of way of said above named company, at, or near the town of Welsh, in Calcasieu parish, Louisiana, with his head down apparently under an influence that deprived him of the exercise of his senses and strength; that the engineer in charge of and running passenger train No. 9, west bound, operated by said company, had notice of the condition and position of the deceased, on that occasion, when said train was fully six hundred yards from him, and that he could easily have stopped said train and obviated killing her husband, but that he carelessly and in utter disregard of the preciousness of human life, ran said train onward—struck her husband with same, fracturing his skull, from the effects of which he died within a very short time.

That her husband was guilty of no contributory negligence and that his death was caused by the fault of the employees of said company, their negligence and want of skill.

Defendant, after pleading the general issue, admitted that plaintiff's husband came to his death by accident on February 10th, 1900, while seated on defendant's track, but denies that said accident was due to fault or negligence on the part of the defendant, or any of its officers, agents or employees, and avers that said accident was contributed to and caused by the deceased's own gross negligence in voluntarily and unnecessarily placing himself in a position of obvious danger on defendant's track, and in failing while there, to exercise proper or any care or caution, to avoid being run over by a passing train.

Judgment was rendered in favor of defendant.

Plaintiff appealed.

### OPINION.

This suit is brought by Marie Hebert, as widow of Vilier Hebert, claiming damages from the defendant company for the death of her husband. It is claimed that the husband was killed by being struck on the head, by some part of a train which was being operated by defendant's employees, and that the injury was received as the result of gross fault and negligence on the part of those employees.

The evidence shows that the deceased, Vilier Hebert, lived about two and a half miles west of the village of Welsh, in the parish of Calcasieu; his residence being about a quarter of a mile to the south of defendant's tracks. He had lived in this same place for many years and must therefore have been familiar with the whole local situation.

The testimony shows that he made a practice of going to Welsh every Saturday morning and returning home in the afternoon. That he made the trip along the defendant company's track, both ways, by walking along the track.

On February 10th, 1900, he made his customary Saturday visit and started homeward in the afternoon. When he had reached a position on defendant's right of way almost opposite his own house, he sat down on the outer edge of the ties or between the ends of the ties, which cross the track. He had been seated at this place about half an hour when defendant's regular west bound passenger train approached him from the direction of Welsh, running at a speed of forty or forty-five miles an hour, struck him on the head as it passed, and killed him instantly.

He had been seen sitting upon the ties by the engineer and fireman some time before they reached him, and he was warned of the approach of the train by the ringing of its bell and the blowing of its whistle, but he remained seated, paying no attention to the signals given, further than to turn his head partly towards the locomotive bearing down upon him.

The plaintiff's counsel concedes, that in order to sustain his action he must bring it within the exceptional class of cases where a plaintiff, in spite of being guilty of contributory negligence is entitled to recover damages for injuries received by him, and this he has undertaken to do. He contends that the attempt to stop the train by the application of the brakes was made when it was useless to have made the attempt, as it was obvious that the train could not then be stopped before reaching Hebert; that the attempt to hold up the train at that late time, might well have been omitted altogether, so far as any practical good to result therefrom was concerned.

His contention is that the train was passing through an open prairie country on a straight line, with an unobstructed view ahead for over a mile; that Hebert was, in point of fact, seen sitting on the track for a half a mile before he was reached; that it was the fireman's duty to have immediately rung the bell and the engineer's duty to have, at once, blown his whistle, so as to apprise Hebert of his danger. That having done so, and seeing that no notice was being taken of the signals, it was the duty of the engineer to have commenced applying his brakes, at a point sufficiently removed from the deceased to have admitted of the stopping of the train, and not to have delayed doing so until the attempt to stop would manifestly prove ineffectual.

He claims that the brakes should have been applied earlier than they were, and that had this been done, the life of the deceased would not have been sacrificed. He further contends that the evidence shows that the deceased was observed by the trainmen on the ties "with his head down", and his position was such as to have at once notified defendant's employees that he was suffering from some physical trouble, and they should have taken precautions accordingly.

The precise distance from Hebert at which the train bell began ringing, and the train whistle commenced blowing is not definitely fixed, but we think it is shown that when the brakes were first applied it was too late, so far as the complete stopping of the train was concerned, to have avoided the accident. The trainmen say they saw nothing sufficiently peculiar in Hebert's position at the end of the ties, to have aroused their suspicions as to his being there under extraordinary conditions. That it is a matter of constant occurrence for men to sit down at the end of the railroad ties and remain sitting, though they hear the signals, until just before the train reaches them, when they will rise and "make motions at the engineer"; by which we understand them to say that this continued sitting on the ties by these trespassers is often purposely done, merely to exasperate the engineer, or because considered as a joke, in seeking to make him hold up his train uselessly.

The train was being operated at the point it was, at a legal rate of speed on schedule time. The engineer was not called upon to slacken its speed upon the bare possibility that unless this should be done, an injury might result by reason of the unknown physical condition of a trespasser. The evidence shows that in point of fact Hebert heard either the ringing of the bell or the blowing of the whistle before the engine reached him, for he turned his head in that direction, though he did not attempt to rise.

We think he had ample time to have escaped unless from sickness or some physical trouble not explained, he was unable to rise at all. Plaintiff suggests that the day was bitterly cold and Hebert had succumbed to the freezing weather, but this is pure conjecture. The evidence does not disclose that he had been sick or that he was sick when the train reached him. Why he did not push himself off from the end of the tie even if he did not rise to his feet, or why he did not rise to his feet, is not explained.

Although it was too late when the brakes were applied to have stopped the train before Hebert was reached, yet the ringing of the bell,

the blowing of the whistle, and the slacking of the speed of the train, gave Hebert timely opportunity to have saved himself by his own efforts.

After consideration of the evidence adduced in this case, we are of the opinion that the judgment appealed from is correct and it is hereby affirmed.