(61 South. 522.)

No. 19,313.

ROBERTS v. LOUISIANA RY. & NAVIGATION CO.

(March 3, 1913. Rehearing Denied March 31, 1913.)

*(Syllabus by the Court.)*

1. DEPOSITIONS (§ 2*)—RIGHT TO TAKE.

Sections 614–621 of the Revised Statutes authorizing the taking of depositions out of court were not repealed by the Code of Practice. 127 La. 312, 53 South. 575, Ann. Cas. 1912A, 976.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 2, 3; Dec. Dig. § 2.*]

2. DEPOSITIONS (§ 73*)—CERTIFICATE—NECESSITY.

Where such depositions were taken by consent before a deputy clerk, and the witnesses were duly cross-examined, and their answers were duly sworn to and subscribed before the

same official, the absence of a formal certificate that such proceedings were had is immaterial.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 165; Dec. Dig. § 73.*]

**3. TRIAL (§ 68*)—REOPENING CASE—RECEPTION OF DEPOSITIONS.**

Even after defendant has closed his evidence, it is discretionary with the judge to reopen the case in order to permit the reception of depositions, which plaintiff's counsel, from inadvertence, had failed to offer in evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 158–163; Dec. Dig. § 68.*]

**4. RAILROADS (§ 390*)—TRESPASSER ON TRACK —LIABILITY.**

The Supreme Court of Louisiana has adopted the doctrine of Bogan's Case, 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418, holding that a railroad company is liable to a trespasser on its trestle without ability to save himself from injury, if those in charge of the train discovered, or by the exercise of care might have discovered, the injured person, and might by the exercise of such care have avoided the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. § 390.*]

**5. DEATH (§ 99*)—DAMAGES—EXCESSIVE RECOVERY.**

Where the plaintiff's son, 25 years old, was killed while asleep on a railroad trestle, and she sued for $10,000 damages for his death, and was awarded by the judge $1,000 for mental suffering, and $4,341.60 for loss of support, held, that the latter amount was excessive, considering the facts and circumstances of the case, which disclosed that the deceased son was a raftsman by vocation, that his employment was not regular, and that he was intemperate and thriftless.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Mrs. Mary Roberts, widow, against the Louisiana Railway & Navigation Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

White, Thornton & Holloman, of Alexandria, for appellant. Robert H. McGimsey, of Alexandria, for appellee.

LAND, J. Plaintiff sued·for $10,000 damages for the death of her son Archie Roberts, aged about 25 years, who was killed on January 17, 1911, by a train of the defendant company, in the town of Pineville, near the end of the trestle leading to the company's railroad bridge across Red river. The petition alleges that the deceased, evidently being fatigued by his long walk over the bridge and trestle, sat down on the ties a few feet from the trestle, and fell asleep, with his head down on his arms and knees; and that while he was thus asleep on the track a switch engine pushing a box car in front of the engine, going from the Alexandria side of the river to the Pineville side, came along and knocked the deceased off the track, inflicting injuries about the head and body from which he died in a few hours.

The petition further alleged that the track was straight for a long distance in either direction from the place where the deceased was struck; that it was in the daytime, about 3 o'clock in the afternoon, and there was nothing to obscure the vision or prevent the engineer and other employés on said train from seeing the deceased; that there was no one on the front end of the box car to watch the track, and, if there were persons on said box car at all, they were so situated that they could not or did not see the deceased, although he was in full view of any one properly situated to watch the track from the train.

The petition further alleged that said railroad bridge and trestle were commonly used by people in crossing from Alexandria to Pineville with the permission of the agents and employés of the defendant company, and that the deceased was permitted to cross said structure, and was not a trespasser.

The petition further alleged that the death of the deceased was caused by the gross fault and negligence of the agents and employés of the defendant company in not keeping a proper lookout for persons on or near the track.

Plaintiff alleged damages in the sum of $5,000 for loss of her son's love and affection

and companionship, and damages in the further sum of $5,000 for the loss of his support.

Defendant for answer, after pleading the general issue, specially denied that plaintiff's son contributed to her support, and averred that Archie Roberts was a "shiftless colored man, and did not engage continuously in work of any kind," and, further, "was addicted to the use of drink," * * * and was intoxicated on the day of the accident. Further answering, the defendant averred that the train was crossing the bridge at a proper rate of speed, and that its advance was guarded by watch on the part of members of its crew, so that anybody walking on the track at the time of the accident could have been observed, "but there was no obligation on the part of defendant or its agents to watch for trespassers drunk, lying down and asleep on their said track at any time."

The cause was tried without a jury, and judgment was rendered in favor of the plaintiff for $5,341.60, with interest and costs. Defendant has appealed. Plaintiff has answered the appeal, and prayed that the judgment be amended by increasing the amount to $9,341.60.

[1] Plaintiff prior to the trial took the depositions of a number of witnesses out of court pursuant to sections 614–621 of the Revised Statutes. Defendant's objection that said sections had been repealed by the Code of Practice is without merit. See Lykiardopoulo v. N. O. & C. R. Light & Power Co., 127 La. 312, 53 South. 575, Ann. Cas. 1912A, 976.

[2] As the depositions were taken by consent before a deputy clerk, and the witnesses were duly cross-examined, and the answers sworn to and subscribed before the same official, the absence of his formal certificate that such proceedings were had is immaterial.

[3] Plaintiff's counsel through inadvertence closed his case without formally offering in evidence the depositions previously taken before the deputy clerk. After defendant closed its evidence, the case was reopened by the court on motion of plaintiff, and the depositions were offered and filed in evidence over the objection of defendant. The matter was within the discretion of the court. Le Blanc v. Nolan, 2 La. Ann. 223. The testimony could not have surprised the defendant.

Defendant's trains cross Red river from Alexandria to Pineville by means of a steel bridge with trestles at each end. On January 7, 1911, Archie Roberts, eldest son of the plaintiff, a strong and vigorous young man in his twenty-sixth year, was killed by a switch train of the defendant while seated on the end of a cross-tie near the end of the trestle in Pineville. The train, composed of a switch engine, tender, and box car, came from Alexandria. The engine was pushing the box car, and the crew consisted of an engineer, fireman, switchman, and yardmaster. The two latter were on the box car, and the yardmaster was performing the duty of a lookout. He was on the running board of the car at the front end, lying with his hands crossed and his chin on them, and had a clear unobstructed view of the track. Archie Roberts had been drinking, and had on his person a half bottle of gin. One witness saw him coming across the trestle, and then sit down on the end of a cross-tie. The section foreman saw him standing near the end of the trestle, and then saw him sit down on the end of a tie, with his head bowed down between his knees. One of the section crew testified to the same effect. Five other witnesses testified that, when Archie Roberts was struck by the switch train, he was sitting on the end of a cross-tie, with his head bowed down on his knees, as if asleep.

The evidence indicates that Roberts was drinking, but there is nothing to show that

he was drunk at the time of the accident. He had been in Alexandria during the day, and in the afternoon crossed to Pineville, and a few minutes before the accident was seen walking near the end of the trestle. He sat down on the end of a tie, and bowed his head on his knees. A number of witnesses testified that Roberts looked as if he were asleep. If not asleep, he was in a stupor of some kind. A few minutes later he was struck by the passing train. Roberts was visible to persons several hundred yards away; and, if the lookout on the box car had kept a proper watch, he would have seen Roberts sitting bent over on the end of the tie, and would have perceived that he paid no attention whatever to the whistle of the locomotive and the noise of the train as it rolled across the bridge. If the lookout had performed his duty, he would have seen the dangerous situation in time to have avoided the accident. The trial judge found that the lookout "was negligent in not seeing the deceased, as there was no good reason for his not seeing him."

[4] In Bogan's, Case, 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418, it was held that a railroad company is liable to a trespasser on its trestle without ability to save himself from injury if those in charge of the train discovered, or by the exercise of ordinary care might have discovered the peril of the injured person, and might by the exercise of such care have avoided the accident.

The doctrine of this case was adopted by this court in the McClanahan Case, 111 La. 781, 35 South. 902.

In Hebert v. Railroad Co., 104 La. 483, 29 South. 239, the trespasser was seen by the train crew sitting on the end of a cross-tie, with his head down; signals of the approach of the train were given by ringing the bell and blowing the whistle; the deceased paid no attention further than turning his head in the direction of the locomotive; and there

was nothing in the position or actions of the deceased to call for the stopping of the train, until it was too late to avoid the accident.

In the case at bar no special warning signals were given, and no attempt was made to stop the train.

In Lloyd v. East Louisiana Railroad Co., 109 La. 446, 33 South. 556, the evidence showed that there was negligence of defendant's employés, "either in the matter of keeping a lookout, or in endeavoring to avoid the accident after discovering the danger."

In the case of Spizale v. L. R. & N. Co., 128 La. 187, 54 South. 714, the evidence tended to show that a boy fell into a ditch while trying to steal a ride on the footboard of the engine. Even in that case the duty of the engineer "to keep a reasonable lookout" was affirmed; and this doctrine is too deeply engrafted in our jurisprudence for further controversy.

In the case of Hammers v. Railway Co., 128 La. 650, 55 South. 4, 34 L. R. A. (N. S.) 685, the injured party was seated under a stationary box car, and there was nothing to show that he was, or could have been, seen by any one of the train crew.

[5] The trial judge allowed the plaintiff $4,341.60 as damages for loss of support, and $1,000 for mental anguish.

Plaintiff lost her husband in January, 1910, and her son, Archie, was killed in January, 1911. Plaintiff's husband was a tenant farmer, and after his death his widow continued to live on the same premises, and to make crops with the assistance of another son about 20 years of age and a widowed daughter. Two other daughters lived with her and worked out in Alexandria. Another daughter, a cripple from birth, lived with the plaintiff. A fourth daughter was married and settled in Shreveport. Plaintiff's eldest son, Archie, was a raftsman by vocation, and was absent from home three

or four months at a time. He seems to have been a good laborer, but was addicted to the use of intoxicating liquors, and sometimes got drunk. It is difficult to determine what he contributed to the support of his mother after the death of his father. He deposited his pay checks with a merchant in Pineville. When about to leave home, he would instruct the merchant to give credit to his mother during his absence, and on his return would pay the bill out of the proceeds of his pay check. No statement of the merchandise sold under this arrangement was filed in evidence. The merchant kept a leaf ledger, and each account, when paid, was torn from the book. The merchant's testimony is somewhat vague and confused, but we gather from his statements that Archie Roberts, when pursuing his vocation of raftsman, was absent from home three or four months at a time; that Archie Roberts earned $1.75 per day, and that his pay checks ranged from $120 to $140; that while Archie Roberts was absent the merchant gave credit to plaintiff for groceries and other merchandise to the amount of $35 or $40; that on Archie Roberts' return he would deliver his pay checks to the merchant, who, after deducting the amount due for goods furnished to the plaintiff, would put the balance to the credit of Archie Roberts, who would draw the money as he required it.

As the merchant testified that the total sales to the plaintiff on the credit of her son amounted to $35 or $40, we infer that there was but one of these transactions. When Archie Roberts returned from work, he made his home with his mother, and worked at odd jobs on the farm and elsewhere. Plaintiff testified that her son made to her other advances to the amount of $10 or $12 per month. It is not probable that the son made such advances while he was absent from home, at work in the swamps. The statement of the plaintiff is not corroborated by any other witness. It may be taken for granted that the son while at home contributed to the expenses of the household. The mother and the children worked, and it cannot be said that her son Archie was her sole support.

What support Archie with his dissipated habits and irregular occupation would have rendered to his mother, had he lived, is a matter of conjecture. We find no sufficient data in the record to affirm the finding of the lower court as to the amount of damages for loss of support. In cases of this kind the practice is to award a lump sum for damages claimed for loss of companionship, society, and support. Under the circumstances of the case, we deem an award of $2,500 to be sufficient.

It is therefore ordered that the judgment below be amended by reducing the amount to $2,500, and that, as thus amended, be affirmed; plaintiff and appellee to pay costs of appeal.

BREAUX, C. J., concurs in the decree.