THOMPSON, J.
This is an action for damages for serious and permanent injuries sustained by the plaintiff in a fall while painting the smokestack of the boiler of the’ compress of defendant at Arcadia, this state. After a trial on the merits, the plaintiff’s demand was rejected, andihe has appealed.
The smokestack was some 40 or 45 feet high, including a spark arrester of 7 or 8 feet, at the top. The apiparatus used in ascending and descending while doing the painting consisted of a five-eighths inch manila rope, one end of which was looped over an S-hook, which was hung onto the top of the spark arrester. Attached to the rope was a small piece of wooden plank, with the end of a rope to each corner, which is called the chair, and on which plaintiff sat while painting. He raised or lowered himself by means of a block and tackle.
He had painted the spark arrester, and had gotten down to within about 12 feet of the roof, when, he says, he was informed that a fire had been started up in the furnace. He told the fireman that it was all right to start the fire, but to cut off the draft, and that he would be through in a few minutes. He says he then got down on the roof, waited a few minutes, and then went back to the top and stood up on the top astride the spark arrester; that he changed and adjusted his rigging, got in his chair, and “slid” down, and was painting the bottom of the spark arrester, or near the bottom, when, he says, the draft was turned back on, causing the flames and sparks to come up through the stack; that the wind blew the smoke over into his face, giving him considerable trouble, but that it was not hot; that he called down to his helper to have the draft cut off before it burned his rope in two; that he *1016 tried, to get Ms painter’s hitch loose before his rope burned, but that the fire was so hot he could not stand to work; that he got back up and tried to get the rope loose, and while attempting to do so that his rope burned in two, or was scorched until it brokp, causing him to fall.
The specific negligence charged against the defendant, and the proximate cause of the plaintiff’s fall and injury, as appears from the petition and the plaintiff’s evidence, is the act of the defendant in starting up the fire in the furnace, which burned rapidly, sending such a blaze up the smokestack as to produce sufficient heat to burn the rope in two, or to burn it or scorch it to,such an extent as to cause it to break.
There is some conflict in the evidence as to the extent of the fire which was started up in -the furnace and as to the measure of heat produced in the smokestack. It is claimed by the defense, and there is evidence to support the contention, that but a slight fire had been started up at the time the rope gave way, not sufficient even to heat the smokestack, let alone cause the rope to burn, or even to be scorched.
Some time after the accident, and before the trial in the lower court, a test was made by making a fire in the furnace of greater heat than that which was made just before the accident to plaintiff, with the result that several reputable citizens testified that they placed their hands on the smokestack and it was not hot enough to burn them. It is also shown that the heat is greater near the bottom than it is up at the top of the smokestack.
But, be that as it may, the pivotal question of fact on which the case must be decided is whether the break of the rope was caused by the fire, or was due to a defect in the rope or to natural decay.
It is shown that immediately after the accident several persons examined the , rope, and at least four of them, the two Williams-es, Daniels, and Goff, testified that the rope was not burned, and bore no evidence of even having been scorched. There was no one produced who testified to the contrary, except Ernest Brown, and there is nothing to corroborate his testimony. The trial jpdge, in his written reasons for judgment, had this to say on the subject:
. “An examination of the rope, and particularly the ends where the rope was severed or parted, taken in connection with all the testimony in the case, does not convince me that the fire or heat caused the rope to break. It appeared more to have been caused by a weakened condition, probably superinduced by the constant contact with certain elements in the paint used, coupled with the fact that at the point where the rope broke it had been thrown or looped over a rather small S-hook, which had evidently strained1 and weakened the rope and caused it to break, while plaintiff perhaps was adjusting himself in his so-called chair, or shifting his position from side to side of the spark arrester.”
It would serve no useful purpose to quote the testimony, which supports the finding of fact by the trial judge. Suffice it to say that the great preponderance of the testimony sustains the judgment brought up for review.
In the lower court the counsel for plaintiff contended — and they contend here— that the evidence of Williams and Goff should not be admitted and considered, because it was taken under the provisions of article 430 of the Code of Practice, and was not taken pursuant to an order of court, and was not taken before a judge or justice of the peace, as required by the said article of the Code.
The application to take the testimony of Williams and Goff was made on the ground that they were old and infirm and in failing health, and fears were entertained that the said parties would die before the trial of the case, and the defendant .would be deprived of their testimony. The order was granted, the plaintiff’s counsel was duly no- *1018 tilled, and the testimony was taken before, and reduced to writing by, the clerk of court. Both of the witnesses were dead at the time the testimony was introduced on the trial in the court below. The procedure may not have been in strict compliance with the article of the Code of Practice, but it was fully authorized under section 615 of the Revised Statutes.
In Lykiardopoulo v. New Orleans & C. R. Light & Power Co, 127 La. 310, 53 South. 577, Ann. Cas. 1912A, 976, the court said:
“Rev. St. §§ 614-621, authorizing the taking of depositions before a notary, without any commission from the court to the notary or written interrogatories, and Code Prac. art. 430, authorizing the court to issue a commission to take depositions, are not in conflict; but both modes of taking depositions, are open to litigants.”
See, also, Roberts v. L. R. & N. Co, 132 La. 446, 61 South. 522, Ann. Cas. 1914D, 1207.
We find no reason to disturb the judgment appealed from, and the same is affirmed, at appellant’s costs.