## CAMPBELL & CO. v. TEXAS & P. RY. CO.
### No. 4724.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Henry W. Bethard, Jr., of Coushatta, for appellee.

MILLS, Judge.

Plaintiff, assignee of Paul Jones and Annie French, brings this suit to recover of defendant railway company $575, the alleged value of ten head of cattle killed, and $25 for injuries to another which was struck by defendant's trains operated in the vicinity of Gahagan, Red river parish, La., during the month of October, 1931.

Defendant admits the killing of one cow on October 23d and two on October 28th, but claims that in both instances it was without fault as the cattle came upon the track at too short a distance ahead of its train to permit of stopping or checking it in time to avoid striking them. Otherwise, the allegations of the petition are denied.

Defendant is appealing from a judgment for plaintiff in the sum of $425, with interest and costs, which appeal has been answered by the prayer of the plaintiff that the judgment be increased to the amount prayed for.

Its right of way being unfenced, the burden is upon defendant to show that it was without fault as to the animals struck within the time alleged. Act No. 70 of 1886. Plaintiff concedes that it has failed to sustain its demand as to the injured cow. The number of cattle killed is fixed at ten and the time as the fall of 1931, by the testimony of defendant's foreman who saw and buried them. He claims, however, that only 3 were killed during the month of October—one on the 23d and two on the 29th. As to these three, defendant's fireman and engineer testify to the proper equipment of the train; that the whistle was blown, the bell rung, and the brakes applied; but that the intervening

space was too short to avoid hitting them. In the absence of any proof to contradict this testimony, plaintiff's only hope of recovery, as to these three cattle, depends upon the soundness of its contention that the proximate cause of the killing was the negligence of defendant's employees in running its train past the station of Gahagan at a speed of 55 miles per hour. At this place the company maintains only a merchant agent. The station consists of a cotton gin, some section houses, and about a half dozen residences in the vicinity. At one time, about ten years ago, due to an oil boom, it had been quite a busy place.

It was held in Blackburn v. Louisiana Railway & Navigation Co., 144 La. 520, 80 So. 708, 711, that it was negligence for a railroad company to run its trains through "thickly populated towns and cities, by depots and places where people are known to frequent," at high rates of speed. In that case, the locus was Colfax, in Grant parish, a town of considerable size and importance. Railroad companies could not maintain their schedules and render proper service to the public if required to slow down their trains for all stations or crossings. There is no law, except in cities, regulating the speed of trains. Schexnaydre v. Texas & Pacific Railway Co., 46 La. Ann. 248, 14 So. 513, 49 Am. St. Rep. 321. In the open country outside of city limits, any speed is not excessive which is consistent with the safety of the train. There is no law or reason why a railroad company should be obliged to stop all or any of its trains at all stations. Davis v. Alexandria & W. R. Co., 152 La. 898, 94 So. 436; Franklin et al. v. L. & A. R. Co., 10 La. App. 526, 120 So. 679.

Its trains are not required to slow down during rainy or foggy weather. Foster v. Texas & Pacific Ry. Co., 5 La. App. 601; Jeter v. Texas & Pacific Ry. Co. (La. App.) 149 So. 144.

It is not negligence for a company to run its train at a speed of 57 miles per hour through a hamlet consisting of three stores, a cotton gin, a potato house, cane derrick or rack, three residences, and five tenant houses. Winfiele v. Texas & Pacific Ry. Co. (La. App.) 150 So. 43.

In view of the above testimony and the above decisions, we can find no negligence on the part of the railroad in the operation of its trains and therefore must reject the demands of the plaintiff as to the three head of cattle. As to the other seven, no proof being offered by defendant to discharge the burden placed upon it by the law, plaintiff must recover if the killing in the month of October, and their value has been reasonably proven.

Paul Jones testified that he saw the ten animals during that month; that they were worth $575; and that he put in a claim for that amount. Julius Tyler swears that he saw four cows killed on one occasion in October. Mr. Dickson testified that he saw five killed and that, according to his recollection, it was in the latter part of that month. Rosie Jones saw three killed on October 29th, and other cattle killed on three other occasions during the month of October.

For defendant, the section foreman swears that though ten were killed in the fall of 1931, only three met their death in October. He fails to corroborate this testimony as to dates by offering his reports made at the time, or the claim filed by Paul Jones. He does say that he refreshed his memory from his diary. We think the killing of the seven head in October is established by a clear preponderance of the evidence and that plaintiff is entitled to recover as to them.

The only testimony given plaintiff in chief as to the value is that of Paul Jones that the ten head were worth $575; that they were a mixed breed and in good condition. For the defendant, its merchant agent, Mr C. W. Hollingsworth, testifies that the animals were raised on his place, but that he had not seen them for a good while; that he knew they were pretty sorry stuff, worth about $10 per head, except the cows, which were worth fifteen or sixteen dollars a head.

After defendant had closed its case, plaintiff sought to introduce further testimony as to the condition and value of the cattle. This was objected to on the ground that it was not proper rebuttal and the objection was overruled. As the question of value, a main issue in the case was gone into by plaintiff in chief, it was not strict rebuttal. Longino v. Traction Co., 120 La. 803, 45 So. 732.

Article 476 of the Code of Practice provides: "On the day fixed for trial, the plaintiff shall open the cause, and produce his witnesses and the evidence in support of his demand."

And Article 477: "When the plaintiff has closed his evidence, the defendant shall bring his witnesses, and produce the proof in support of his defense; the plaintiff may then bring additional witnesses, or his former witnesses, to rebut the testimony adduced by the defendant, or to lessen the weight of such testimony."

In Stone v. Carter, 5 La. 448, it is held that under the latter article, it is discretionary with the court to permit additional testimony after defendant has closed, when that evidence tends to lessen the weight of the testimony of defendant's witnesses.

In Wyatt v. Texas Pipe Line Co., 9 La. App. 248, 120 So. 123, 124, the provisions of this article were held to be merely directory and not mandatory, the court saying: "After the admission of the additional testimony,

the appellant did not set up surprise or ask that he be permitted to introduce further testimony."

The general rule is stated in "Jones on Evidence," § 809, to be: "The practice should not be encouraged of allowing either party, after resting his case, to amend and add to his proof until by repeated experiments he conforms to the view of the court, and when the burden of proving any matter is thrown upon a party by the pleadings, he must generally introduce, in the first instance, all the evidence upon which he relies; and he cannot, after going into part of his case, reserve the residue of his evidence for a subsequent opportunity."

This is modified by the following section in which the author says: "In the discretion of the court, the rule stated in the last section may be relaxed, if the ends of justice so require."

So in Le Blanc v. Nolan, 2 La. Ann. 223: "The plaintiff ought, before closing his evidence in chief, to offer all the testimony on which he relies for a recovery. When, from inadvertence or other cause, he has failed to do so, it is always discretionary with the judge to permit the party to supply the deficiency, when the testimony offered is not of a character to operate a surprise upon his adversary."

To the same effect is Roberts v. Louisiana Railway & Navigation Company, 132 La. 446, 61 So. 522, Ann. Cas. 1914D, 1207.

In the case before us, defendant did not plead surprise or ask for an opportunity to present additional testimony. Ours is a liberal system of pleading. Jackson v. Natchez & W. R. Co., 114 La. 991, 38 So. 701, 70 L. R. A. 294, 108 Am. St. Rep. 366.

Under the above authorities, the admission of this testimony was within the judicial discretion of the court. Rulings in such cases should not be reversed unless there is a clear abuse of discretion. In view of the above authorities, we can find no such abuse in this case.

█ Over the objection, Paul Jones testified that five of the cattle were cows; four weighed 1,000 pounds each; another weighed more; two weighed 900 pounds; a bull, 1,200 pounds, and that the rest would average seven or eight hundred pounds. Mr. Hester, farm demonstration agent, testified that common cattle during the fall of 1931 were worth 7 cents a pound. From this we figure their average weight to have been about 900 pounds, making their value about $63 a head, aggregating $441.

The district judge allowed $425. We are not prepared to say that this is not correct. The judgment appealed from is therefore affirmed.