The plaintiff in this case is an insurance company which had to pay the sum of $165 for damages to an automobile which it had insured and which was damaged in an accident on September 29, 1940, which occurred on a gravel road leading from Chatagnier and connecting with the paved highway between Eunice and Opelousas. The insured automobile belonged to Taney Smith. The policy contained the usual $50 deductible clause and the total alleged damage therefore was $215. The assured received the sum of $165 in cash from the plaintiff insurance company herein and thereupon subrogated it to his right or cause of action against the party he claims is responsible for the damage that was caused.
The defendant is E. Varise Fontenot, father of a young boy named Vincent Fontenot, who was driving his father's automobile and who the plaintiff alleges, through negligence and recklessness, caused the damage complained of when he ran into the Smith car which, at the moment, was under the control of Wallace Smith, son of the assured.
There are two legal propositions raised by the defendant, one with regard to the introduction of the policy of insurance covering the damaged Smith car and the other with regard to the act of subrogation which is the basis of the plaintiff's cause of action. The defendant also denies the negligence that is charged against his son and pleads in the alternative that if he was guilty of any negligence that the negligence of Wallace Smith and that of another party contributed to the accident and therefore the plaintiff cannot recover.
With regard to the introduction of the policy of insurance in evidence, we are given to understand that plaintiff did not have the original policy in court at the trial of the case in order to introduce it then. Instead, a copy of the policy was produced. Counsel for defendant now contends that this copy is secondary evidence and as the proper foundation had not been laid for its introduction, it is inadmissible and his objection to its introduction should have been sustained. He cites in support of his contention three cases but we find that only one has any bearing on the point; that is the case of Weisman Insurance Agency v. Bass, 14 La.App. 207, 127 So. 635. But even in that case the situation was different from the one which we have here because there seems to have been no attempt made to account for the absence of the original policy and plaintiff made no showing whatsoever that the copy introduced was the only evidence possible to be produced. In this case it is not shown why plaintiff did not have the original policy at the time the case was tried in order to introduce it, but it is evident that it was available, and from a statement made by the district judge, we are given to understand that he was assured by the agent of the insurance company at the time he testified that the policy would be introduced later, in order that the record might be completed. That being so, it was not necessary to lay any foundation to show that it could not be produced. On the contrary assurance was given that it would be and as a matter of fact it was produced as promised.
Counsel for defendant then stresses the point that it was produced too late because the evidence in the case had been closed. Under the circumstances and in view of the district judge's statement that the court had been assured that it would be produced and filed in the record, we do not think that he abused his discretion in reopening the case on motion properly made for the purpose, and in permitting the policy *Page 101 
to be placed therein as part of the testimony.
We do not think that the second point raised by counsel for defendant has any more merit than the first. This is his objection with regard to the proof of the subrogation on which the plaintiff relies in order to recover. When counsel for plaintiff offered to introduce the act of subrogation from Smith to the plaintiff through the testimony of the Notary Public before whom it had been executed, counsel for defendant objected on the ground that Smith had not been placed on the stand prior thereto, and asked whether or not he had signed the act. He contended, it seems, that the Notary could only testify about Smith's signature in the event the latter had denied that he had executed the document. As we understand now, however, he does not rest his objection on that ground. He contends that plaintiff, having failed to prove up the policy under which the subrogation arose, he could not offer testimony to prove the subrogation itself. This contention however is now disposed of by the ruling of the district judge which we have just upheld and under which the original policy was properly filed in the record.
Counsel now further contends that the subrogation, in its present form, was not properly witnessed, is not an authentic act, and therefore cannot make proof of itself. As in our opinion the kind of conventional subrogation with which we are here concerned is not dependent on any particular form, we find no merit in counsel's objection. According to Article 2159 of the Civil Code, subrogation is either conventional or legal. Article 2160 then defines the two instances in which it is conventional, the one with which we are here concerned being the first. That, according to this article, is "when the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor"; and the only requirement, as further provided, is that it "must be expressed and made at the same time as the payment." In the policy of insurance issued to the assured in this case, there is the following stipulation regarding subrogation: "This Company may require from the Assured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this Company." In exercising its right under that clause, the plaintiff obviously required an assignment from its assured, of his right of action against the defendant herein for payment of his damage to the extent of $165, for on October 17, 1940, he executed the form presented to him, before a Notary Public, in which it is stipulated that in consideration of the sum so paid, he subrogates it to all of his rights in the premises. Thus it appears that there was a full compliance with the provisions of Article 2160 of the Civil Code, and there is no doubt left in our minds as to the validity and proof of the act of subrogation.
On the merits, the case presents a question of fact on which we find the testimony of the witnesses who actually saw the accident, to be very conflicting.
Smith who was driving south, had had trouble with his car and had to send to Eunice for a mechanic to tow him into that town. The mechanic, a man by the name of Helen Brown, drove to the place where the car was stalled on the highway, and hooked it to the back of his car by means of a chain some seven to nine feet long, in order to tow it in. With Brown in his car, seated on the front seat, was his brother-in-law, Cleveland Juneau. Smith remained in his car to guide it as it was being towed. According to his testimony they were not going more than twenty-five miles an hour.
As they proceeded south, a car occupied by three young girls, one of whom was driving, approached them from the north. This car was going at a rather fast speed and raising a considerable cloud of dust behind it. It was being followed at a distance which is variously estimated at from one hundred and fifty feet to two or three city blocks, by the defendant's car, driven by his young son. Smith, Brown and his brother-in-law, all three have the impression that these young girls and young Fontenot and a companion who was with him, were having a race and that the Fontenot car was attempting to pass ahead of the young girls. The proof does not justify that conclusion. However, there is but little doubt that the young girls were driving at a pretty fast rate of speed as they passed the two cars that were in tandem and the cloud of dust evidently obstructed the view of young Fontenot in the car that was following them. Within a few moments after the girls' car had passed the Smith car was when the accident happened. The testimony of Smith and Brown and Juneau, is that it was at *Page 102 
that moment that these boys were getting ready to pass ahead of the girls' car, and in pulling to the left of the road in an effort to do so, ran into them. The Fontenot car first struck the Brown car, evidently bounded back a little, and then struck the Smith car.
The young ladies did not see the accident as they went on ahead. Young Fontenot and his companion insist that the Brown car which was towing the Smith car ran into their car as they occupied their right path in the highway. As already stated, on the conflict which appears in all of this testimony, it would be difficult to decide which of the two cars was on its wrong side of the road.
It strikes us that on account of the dust which was being raised by the fast moving car in which the girls were traveling, there was presented a situation of greater danger to the Fontenot, than to the Brown car. As far as Smith himself is concerned, we do not know what he could have done as he seems to have been entirely at the mercy of the driver Brown in the car ahead which was towing his. We do believe that the situation called for greater precaution on the part of the young boys than they seem to have taken, because we judge from their own testimony that they were not going slow themselves. With the cloud of dust ahead of them and which probably enveloped them, we believe that they were going a bit too fast and the driver did not have his car under proper control.
Moreover, the preponderance of the testimony relating to the physical facts after the happening of the accident, is to the effect that the Fontenot car was more to its left side of the road than was the Brown car and that it ran into the Brown car. The skid marks which showed in the road right after the accident, placed the Fontenot car at least in the center of the road with its left wheels fairly over that point. The relative position of the two cars after they came to rest indicate that it was the Fontenot car that did the striking. The Brown car came to rest on its right hand side of the road near the ditch on that side whereas the Fontenot car was almost completely across the road with its back wheels some two or three feet from the ditch on its right hand side. If it had been struck by the Brown car as is contended, those are not the positions in which both cars would have come to rest.
The trial judge came to the conclusion that the driver of the defendant's car was to blame for the accident and we find no reason to disagree with him.
A last point that is urged by counsel for defendant is to the effect that plaintiff has not proven the amount of the damage that was done to the Smith car but it is shown that the insurance company had a proper estimate made of the damage, and payment was based on that estimate for which Smith, their insured, gave his receipt, after allowing for the $50 deductible under the policy.
Judgment affirmed at the costs of the defendant, appellant herein.