Defendant has appealed from the judgment in plaintiff's favor for $480.00.
The trial judge gave written reasons for judgment, which in our opinion cover the case so thoroughly that we adopt them as our own.
"Plaintiff, Ruiz, a real estate broker, brings this suit against defendant, Trocchiano, another real estate broker, for one-half of the amount of the commission received by the defendant for the sale of the property, 4201-03 Canal Street, New Orleans, Louisiana, by Mrs. Trolle to Mrs. Nuccio.
"Plaintiff alleges that the owner, Mrs. Trolle, entered into a written contract with *Page 185 
plaintiff on November 15, 1946, under the terms of which he was given the exclusive right to sell the property for a period of 90 days. He further alleges that this contract was extended by oral agreement for an additional period of six months, and that during the renewal period the defendant contacted him with respect to the sale of said property. He alleges that he advised defendant that he had an exclusive contract on the property, that his 'For Sale' sign was still posted thereon, and that he would be glad to cooperate with defendant in making a sale of the property. He avers that the defendant contacted the owner and advised her that he would cooperate with plaintiff and agreed to divide the commission with plaintiff. He further alleges that the property was sold for the sum of $21,500, and that defendant collected the entire commission but has refused to pay to plaintiff one-half of the commission notwithstanding amicable demand.
"The defendant admits the execution of the original 90-day exclusive listing contract and admits amicable demand by plaintiff for one-half of the commission, but he denies all other allegations of plaintiff's petition. In reconvention, defendant claims the sum of $5000 damages for humiliation and embarrassment resulting from the bringing of this suit.
"The facts as established by the preponderance of the evidence are as follows:
"Mrs. Trolle, the owner of the property, 4201-03 Canal Street, gave to plaintiff, Ruiz, who had been handling the sale of all her real estate in the past, an exclusive written contract to sell the property for a period of ninety days from and after November 15, 1946. At approximately the time of its expiration date, this contract was extended verbally for an additional period of six months, during which time plaintiff continued to advertise the property for sale, maintained a 'For Sale' sign, approximately 4 x 8 feet, on the property, and contacted the owner from time to time with respect to certain offers for the purchase of the property. During the period of the renewal, Mr. and Mrs. Glorioso, real estate salesmen in the office of the defendant, Trocchiano, and Trocchiano learned that this property was for sale through one Lancaster, who was connected with plaintiff's office, and also through the plaintiff's sign which was still posted on the property. The Gloriosos called to see Mrs. Trolle about the sale of the property on behalf of a prospective purchaser named Mrs. Nuccio. Mrs. Trolle, the owner, advised the Gloriosos that Ruiz was handling the sale of her property and that in the event of a sale his commission would have to be taken care of. The next day Trocchiano called upon Mrs. Trolle and told her it was customary for agents to cooperate with each other in the sale of property and advised her that if she would sign an authorization card, naming the price at which she would sell the property, he, Trocchiano, would see that the plaintiff would be taken care of with respect to his commission. Mrs. Trolle advised Ruiz of her submission of this offer and Ruiz told her he would be glad to cooperate in accordance with the usual custom of agents in New Orleans. The sale was completed. Trocchiano collected the entire commission and has refused to divide it with Ruiz.
"It has been established beyond question that the universal custom in New Orleans and the adjoining areas is for brokers to cooperate with each other in the sale of real estate and where they do so cooperate the agent who has an exclusive listing contract and the agent who procures the purchaser divide the commission equally between them. This custom was known to both the plaintiff and the defendant, and the defendant on a prior occasion, while a salesman in the Clesi office, actually participated in such a division with the plaintiff, Ruiz, in connection with another similar transaction.
"It is true that it has also been shown that where one broker is a member of the New Orleans Real Estate Board, a private organization, and where the other broker is not a member, the broker who is a member may refuse to cooperate with the broker who is not a member; but where the member broker does so cooperate, as he may do in his own discretion, the usual custom of dividing the commission prevails.
"It also is true that the defendant Trocchiano denies that he told Mrs. Trolle that *Page 186 
he would take care of plaintiff's share of the commission. He testified that Mrs. Trolle told him that Ruiz's contract had expired and that Ruiz failed to sell the property, and defendant says that Mrs. Trolle thereupon gave him an exclusive contract to sell the property. He is confirmed in this by Mr. and Mrs. Glorioso, his salesmen, who split the commission with him. On the other hand, Ruiz and Mrs. Trolle are confirmed in their statements by Mrs. Hiller, who was present at the time the agreement was made between Mrs. Trolle and Trocchiano.
"I was not at all impressed by the testimony of Trocchiano or by his attitude and and demeanor on the witness stand. There is considerable variance in material particulars between the testimony of the Gloriosos themselves, that of Trocchiano and and that of Mrs. Nuccio, the purchaser. Trocchiano and the Gloriosos have an interest in the outcome of the case. It is true that Ruiz also has an interest in the outcome of the case, and his testimony must likewise be discounted for that reason. I was much impressed, however, by the apparent truthfulness and fairness of both Mrs. Hiller and Mrs. Trolle. Mrs. Hiller, a stranger not connected with any of the parties to the suit, was brought in from the country to testify and she gave a straightforward story of what happened. She has no interest whatsoever in the outcome of the case. I was also impressed by the testimony of Mrs. Trolle, who was an unwilling witness and who not only had no interest in the outcome of the case but in fact testified against her own interest, since her testimony exposed her to a possible double payment of commission. The testimony of Mrs. Trolle, Mrs. Hiller and Ruiz is more in accordance with the probabilities, considering the fact that Ruiz continued to maintain his sign on the property, that the Gloriosos and Trocchiano learned that the property was for sale through this sign and through Trocchiano's office, and that it was the universal custom in New Orleans to split the commission under the conditions prevailing in this case.
"The defendant has contended very vigorously that if there was an agreement between Trocchiano and Mrs. Trolle for a division of the commission between Trocchiano and Ruiz, this constituted a contract for the benefit of a third person, and that since Ruiz did not accept the benefits of the contract, as provided by Art. 1890 of the Civil Code, he, Ruiz, is not entitled to recover in this case. As I see it, this Article has no application to this case. Ruiz is not a third party beneficiary to the contract. He is one of the principal parties to the contract as he had an exclusive contract with Mrs. Trolle under the terms of which he had an exclusive right to sell the property and was entitled to the entire commission on the sale made in this case. If there was any third party beneficiary to the contract, it was Trocchiano, who came into the picture later for the purpose of cooperating in the sale and with the understanding that he would split the commission with Ruiz. Furthermore, if any acceptance by Ruiz were required, that acceptance came about when Mrs. Trolle advised Ruiz of the negotiations and he agreed to Trocchiano's cooperating in the sale under the usual custom prevailing between brokers in New Orleans. Furthermore, Ruiz's acceptance of one-half of the commission in lieu of the entire commission due him under the contract is evidenced by his amicable demand and his judicial demand for one-half of the commission in lieu of the entire amount to which he was entitled.
"The defendant further contends that Ruiz should file suit against Mrs. Trolle and not against Trocchiano, and that Mrs. Trolle in turn should later file a suit against Trocchiano. Such a procedure would not be in accordance with the agreement which Trocchiano made with Mrs. Trolle and which she in turn with his authorization communicated to Ruiz, and it would result in a multiplicity of suits, a practice which is always condemned by the courts.
"I believe that both in law and in equity and justice the commission in this case should be divided equally between Trocchiano and Ruiz in accordance with their agreement and with the universal custom prevailing in New Orleans. Any other disposition of the case would result in an unjust enrichment of Trocchiano at the *Page 187 
expense of either Ruiz or Mrs. Trolle, or both. There was only one sale; only one commission should be paid; and that commission should be divided equally between the two cooperating agents.
"At the conclusion of plaintiff's case, and again at the conclusion of the entire case, the defendant filed an exception of no right of action based on the contention that the plaintiff had not alleged and had not proved that he was a duly licensed broker as required by law.
"It has been held on several occasions both by the Supreme Court and the Courts of Appeal that where an agent sues for commissions, he is not required to allege or prove the payment of his licenses; his failure to have a license being a matter of defense to be set up and proved by the defendant. Stanford v. Bischoff, 159 La. 892, 106 So. 371; Viguerie v. Davis, 5 La. App. 77; Layne v. Henderson, 9 La. App. 452, 121 So. 313.
"The exception therefore is not well-founded. However, in the interest of justice, I reopened the case in order that both plaintiff and defendant might offer proof with respect to the payment or nonpayment of plaintiff's licenses. Defendant offered no proof, but plaintiff produced his licenses for the years in question. There is therefore no merit in this defense.
"There will he judgment in favor of plaintiff and against defendant for one-half of the total commission paid on the sale in question, that is, for the sum of $480, with legal interest from the date of judicial demand until paid, and for all costs. As there is no merit to the reconventional demand, that demand will be dismissed."
We do not see that any benefit could be derived from our attempting to add anything thereto. All findings of fact are amply supported by competent evidence, and there appears to be no error, manifest or otherwise, in the judgment.
The only complaint of appellant which we deem worthy of mention addresses it self to the action of the trial court in reopening the case, over appellant's objection, for the purpose of admitting additional evidence respecting whether plaintiff was duly licensed.
As the judge has correctly pointed out, a real estate broker suing for his commission is not required to allege or prove the payment of his license; the nonpayment of the broker's license is an affirmative defense which must be set up and proved by the defendant. The case was reopened to permit both parties to submit evidence respecting the payment or nonpayment of plaintiff's license.
It is well settled that the reopening of a case is a matter lodged within the discretion of the court. Lafield v. Balzrette, La. App., 21 So.2d 156; Ingargiola v. Schnell, La. App., 11 So.2d 281; Camden Fire Ins. Ass'n v. Fontenot, La. App., 11 So.2d 99; Lampton Reid Co. v. Fortenberry, La. App., 168 So. 36; Campbell Co. v. Texas P. Ry. Co., La. App., 152 So. 351; Bolinger v. Williams Bros., Inc., La. App., 134 So. 356; Wyatt v. Texas Pipe Line Co., 9 La. App. 248, 120 So. 123; Gerth's Realty Experts v. Kracke, 156 La. 36; 100 So. 41; Roberts v. Louisiana Ry. Navigation Co., 132 La. 446, 61 So. 522, Ann.Cas. 1914D, 1207; Le Blanc v. Nolan, 2 La. Ann. 223; Stone v. Carter, 5 La. 448; Richardson v. DeBruys, 4 Mart., N.S., 127.
Such a ruling should not be disturbed unless there is a clear abuse of discretion, and in view of the above authorities we find that the judge in this case correctly and equitably exercised his discretion.
Defendant, as reconvenor, alleged that this suit was filed maliciously and without probable cause, and that he was damaged thereby to the extent of $5,000.00, for which he prayed judgment in reconvention. As we have found for the plaintiff, the reconventional demand must fall.
The judgment appealed from will be affirmed.
Affirmed. *Page 225