LOTTINGER, Judge.
The plaintiff herein, E. M. Glynn, Inc., filed suit naming as defendants Mrs. Olive T. Duplantis and others, wherein he prayed for judgment against the defendants in the amount of $25,887.69. In its petition, the petitioner recited that the defendants were owners of several contiguous tracts of land in the Parish of Terrebonne, Louisi.ana, and that the corporation, through its President, E. M. Glynn, in January of 1964, began contacting the defendants to acquire a real estate listing for the sale and/or lease of those properties. The petition alleged further that the defendants orally agreed to pay the plaintiff a real estate commission amounting to five per cent of the gross rentals should the petitioner find a satisfactory tenant for the premises. The plaintiff alleged further that it, through its President, expended much time and effort in obtaining a satisfactory tenant and that it did on April 28, 1964, arrange a meeting between the defendants and representatives of a concern with whom the defendants later executed a lease. The petitioner alleged that it was excluded from the negotiations shortly after bringing the parties together, and that subsequently the defendants and the concern which it had obtained for them as a tenant entered into a long term lease. The petition finally alleged that it was only through the diligent efforts of the petitioner that the lease was perfected. The amount prayed for in the petition apparently represents five per cent of the total rental to be paid to the defendants over the entire term of the lease.
The defendants filed an exception of no right of action or cause of action wherein they alleged that the plaintiff’s petition disclosed no right or cause of action as the plaintiff was not a licensed broker, under the provisions of R.S. 37:1431-37:1459 as it had never filed with the Clerk of the Seventeenth Judicial District Court or with the Clerk of any other Parish, the bond required under the provisions of R.S. 37 :- 1447, contending that the filing thereof is required by R.S. 37:1448. The exception went on to state that under the provisions of R.S. 37:1450, the plaintiff could not maintain a suit for alleged brokerage fees earned while plaintiff was not a duly licensed broker. The exceptions were subsequently taken up and tried and the District Court overruled the exception of no cause of action, but maintained the exception of no right of action. It is from this judgment that the plaintiff has appealed devolutively to this Court, assigning three specifications of error on the part of the Trial Judge.
These assignments of error are: 1. That the Court erred in considering affirmative defenses on an exception of no right of action over the objection of the appellant, 2. In finding as a fact that the appellant was not a real estate broker duly licensed under the laws of the State of Louisiana, and 3. In finding as a fact that appellant has not filed a real estate broker’s bond with a Clerk of the Seventeenth Judicial *86 District Court in and for the Parish of Terrebonne or any other Parish as required by the laws of the State of Louisiana.
With reference to the first assignment of error relative to the alleged error on the part of the Trial Court in considering what counsel for appellant styles affirmative defenses on an exception of no right of action, counsel asserts that an allegation relative to the absence of a broker’s license and/or broker’s bond is an assertion that the contract is illegal, and further that the illegality of a contract is an affirmative defense and affirmative defenses are not triable prematurely by exception. As authority for this last statement he cites Article 1005 of the Code of Civil Procedure. That article reads as follows:
“The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an. incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.”
Our appreciation of this article is that it delineates certain specified affirmative defenses, identifies those pleas named in the article as affirmative defenses, and states that they, and any other matter constituting an affirmative defense, shall be set forth affirmatively in an answer to a demand or petition. We do not believe that an allegation relative to the absence of a broker’s license and/or a broker’s bond is necessarily an assertion that the contract is illegal. Certainly this article does not stand for the proposition that the illegality of a contract is exclusively an affirmative defense nor does it stand for the proposition that an affirmative defense is not triable prematurely by exception. Counsel also cites the case of Ruiz v. Trocchiano, 38 So.2d 184 (La.App.1949); Kaufman Agency v. Viccellio, 174 So. 709 (La.App.1937) as-authority for the proposition that the absence of a broker’s license is an affirmative defense to be proved by the defendants. These cases were decided long before our Code of Civil Procedure was enacted.
We do not believe that the allegation of lack of a bond and/or license by the plaintiff as urged by the defendants is necessarily an affirmative defense. They have styled this defense an exception of no right of action and no cause of action. In Vegas et al. v. Cheramie et al. (La.App.1953), 69 So.2d 66, we had occasion to consider the distinction between and the purposes of an exception of no right of action and one of no cause of action. In that case, we said:
“While we recognize that it is common practice in the State of Louisiana to combine exceptions of no right and no cause of action, the fact remains that there is a decided difference between the two. This difference has perhaps been best explained by Professor Henry G. McMahon in 11 Tulane L.R. 527, 532 and 533 as follows:
‘There is no doubt that in a number of cases the plaintiff’s lack of interest in the litigation has been raised through the medium of the exception of no cause of action. But despite the fact that the latter has been employed successfully in a number of cases where no question was raised as to its applicability, a difference between the respective functions of these two exceptions obtains in modern Louisiana procedure. This distinction has been pointed out by the writer elsewhere, when it was said, in stating the difference of function between the ex *87 ception of no cause of action and that of no right of action, that:
The former is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally.
From the writer’s opinion that the only difference between the exception of no right of action and want of interest is in name, it would follow that the distinction noted above likewise obtains between the •exceptions of no cause of action and want of interest. The functions of the former is to raise the general issue as to whether any remedy is afforded by the law; that of the latter is to raise the question of whether a remedy afforded by the law can be invoked by a particular plaintiff. The former relates 'generally to the action; the latter, specifically to the person of the plaintiff.’ ” (Emphasis ours).
A reading of the defendants’ exception readily illustrates that it raises the question as to whether or not the plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy and further raises the issue as to whether the plaintiff has the right to invoke a remedy which the law extends only conditionally. The pertinent provisions of Title 37 of the Revised Statutes provides that before any person opens, engages in, manages or conducts a real estate agency or office, he shall obtain a license, and in connection therewith shall post a bond which is to be recorded in accordance with law. The defendants’ exception relates to the alleged fact that the plaintiff has never recorded the bond in conformity with the provisions of Title 37. That same Title of the Revised Statutes also provides that no person unprovided with a license in accordance with the provisions thereof shall be entitled to collect a fee for the performance of services as a real estate agent. Therefore, the defendants’ exception clearly relates to the question of whether or not E. M. Glynn, Inc. has the right to invoke a remedy which the law extends to only those who are properly licensed real estate agents or brokers under the terms of Title 37. Generically speaking, the exception does raise the question as to whether or not E. M. Glynn, Inc. belongs to that particular class, in this instance duly licensed real ' estate agents, in whose exclusive favor the law extends the remedy of bringing suit for real estate commissions due.
The pertinent provisions of R.S. 37:1447 read as follows:
“A. Before any person opens, engages in, manages or conducts any real estate agency or office, or deals in real estate or rent collecting, as agent or broker, either in an office or otherwise, such person shall furnish bond with security in favor of the governor in the amount of one hundred dollars for every thousand population or fraction thereof in the parish in which the agent or broker proposes to do business. The bond * * * shall be conditioned that the agent or broker shall carry out the objects and purposes for which his agency, office or business has been established, and that the agent or broker shall honestly conduct his business and pay all damages which may result from his actions as a real estate agent or broker * *
R.S. 37:1448 provides as follows:
“A. A copy of the bond required by R.S. 37:1447 shall be filed with the clerk of the district court of the parish of the domicile of the real estate *88 agent or broker. All non-resident brokers who do not maintain an office in this state shall file the bond with the clerk of the district court of the parish of East Baton Rouge.
B. An additional copy of the bond required by R.S. 37:1447 shall also be filed with the clerk of court of the parish in which the personal surety on such bond owns immovable property, and in the parish of Orleans, with the recorder of mortgages.
The clerk of court, or the recorder of mortgages in the parish of Orleans, shall record the bond in his mortgage records.
C. The clerk of the district court shall keep an index book of the names of all persons filing bonds under this Section. The clerk, or recorder of mortgages, shall charge for such entry and recordation as now provided by law. As amended Acts 1962, No. 89, § 1.” (Emphasis ours.)
R.S. 37:1449 provides the following:
“Any person who' fails to furnish the bond required by R.S. 37:1447 or who fails to file the bond as required by R.S. 37:1448 shall be prohibited from engaging in a real estate business or real estate agency.
Whoever violates this Section shall be fined not less than fifty dollars nor more than one hundred dollars, or imprisoned for not less than thirty days nor more than sixty days, or both.”
R.S. 37:1450 provides the following:
“No person, not licensed in accordance with the provisions of this Chapter, shall recover any fee, claim or charge for brokerage in the courts of this state.”
R.S. 37:1441 provides as follows:
“Every broker, except as otherwise provided in R.S. 37:1440A, shall maintain a place of business in this state. In case a broker maintains more than one place of business within this state, a branch office license shall be issued to such broker for each branch office so maintained. No branch office license shall be issued until the required bond is furnished and filed in the parish in which branch office is located.”
The testimony and documentary evidence in the record support the fact that E. M. Glynn, Inc. did in fact execute the bond required by the statute as principal on October 17, 1963, said bond being in the amount of $10,000, with the suretjr on said bond being the Employer’s Liability Insurance Corporation, Ltd. This bond, by its terms, covers the period January 1, 1964, and ending December 31, 1964. The record likewise reflects that the plaintiff corporation was issued a license to operate as a real estate or business chance broker in the State of Louisiana, for the year ending December 31, 1964, by the Louisiana Real Estate Commission and the Department of Occupational Standards of the State of Louisiana.
The record also contains testimony and a certificate from the Clerk of the Seventeenth Judicial District Court in and for the Parish of Terrebonne, to the effect that the mortgage records of his office do not show any recordation of any bond in the name of E. M. Glynn, Inc., furnished under the provisions of R.S. 13:1447. The Clerk of Court, in his testimony, testified that he had a binder in his office in which real estate bonds were maintained. He also testified that to the best of his knowledge all real estate bonds filed in Terrebonne Parish were filed in that volume and that to the best of his knowledge he knew of no real estate bonds which had ever been placed in the mortgage records in Terrebonne *89 Parish. The Clerk did say that while it was not his present practice to record bonds in the mortgage records, that “if someone were to come in and say would you record this bond in the mortgage records and he was to pay me I think I would record it in the mortgage records”. Under cross-examination by counsel for defendants, the Clerk testified as follows :
“Q. Did E. M. Glynn, Inc., E. M. Glynn Realtor, Inc., or E. M. Glynn in any form pay you to record any real estate bond in which he or any alleged corporation is interested?
A. I don’t think so. I don’t have any independent recollection of any specific bond.
•Q. Had any request been made to record those bonds or that bond in the mortgage records and had the proper fee been paid would you have recorded it?
A. Yes, sir, most definitely.”
Therefore, it is clear from the record and the testimony that E. M. Glynn, Inc. did obtain a license as required by R.S. 37:1431-37:1459. It is also clear that the bond required by R.S. 37:1447 in connection with that license was not filed in the mortgage records of Terrebonne Parish as required by R.S. 37:1448. R.S. 37:1449 provides as a partial penalty for failure to furnish or file the bond in accordance with R.S. 37 :- 1448, viz that that person shall be prohibited from engaging in a real estate business or real estate agency. R.S. 37:1450 provides that no person not licensed in accordance with the provisions of Chapter 17 shall recover any fee, claim or charge for brokerage in the Courts of this state.
We find the statutes in question to be clear and unambiguous in their requirement that the bond furnished in connection with the license be recorded in the mortgage records of the Parish wherein the real estate agent or broker is domiciled and in any parish where the real estate agent or broker has a branch office. The record shows that the plaintiff, while domiciled in the Parish of Lafourche, had established a branch office in the Parish of Terrebonne prior to the time that the alleged services were performed.
E. M. Glynn was called by the defendants under cross-examination at the time of the trial of the exceptions. The substance of his testimony relative to his relationship with the corporation is that the corporation was incorporated January 1, 1959, that there were three named incorpo-rators; an attorney, his bookkeeper, and himself. There were ten shares of stock issued originally, eight of which were issued to Mr. Glynn, and one each to the other incorporators. Mr. Glynn advanced all of the money which represented the purchase price of the capital stock of the corporation, with the other two incorpo-rators having never advanced any money, it being intended from inception that Mr. Glynn would advance all of the funds required for the capital of the corporation and would at all times own all of the stock thereof. Mr. Glynn’s language with reference to the other two incorporators is to the effect that “they had no interest in it, no one other than me. It’s a closed corporation”. Later in his testimony, Mr. Glynn testified as follows:
“A. Like I told him we issued, we organized the corporation. We issued two shares of stock to these dummy stockholders which didn’t have any money invested in it. It’s all my money. It was sole ownership and they signed the stock back over to me. * * *
Q. * * * Actually Mr. Caillouet and Mr. Rivero never owned any part of this corporation, is that right ?
A. Not when it’s a closed corporation. I owned all the money and everything.
*90 Q. You owned all the money from the beginning?
A. Yes. Certainly.”
We can only interpret the testimony of Mr. Glynn to be to the net effect that E. M. Glynn, Inc. was organized for the purpose and intent of providing E. M. Glynn individually with a corporation which he, from its inception, would own and control exclusively. As stated before, while the corporation had obtained a broker’s license from the State of Louisiana, E. M. Glynn personally held no license whatsoever from the state, either as a broker or as a salesman. All of the alleged effort expended on behalf of the plaintiff which gives rise to the instant suit was expended by E. M. Glynn individually in his capacity as President of the corporation. It is clear to us that, at least in this instance, E. M. Glynn was conducting a real estate broker’s business through a corporation wholly owned and controlled by him from its inception. R.S. 37:1437 provides as follows:
“No person shall engage in tire business or capacity, either directly or indirectly, of a real estate broker, a real estate salesman or a business chance broker unless he has a license under the provisions of this Chapter. As amended Acts 1962, No. 89, § 1.”
We believe that the record clearly illustrates that Mr. Glynn personally and indirectly was engaging in the real estate business without the benefit of a license in violation of R.S. 37:1437.
The failure of E. M. Glynn, Inc., to file and record its bond in the mortgage records of the Parish of Terrebonne, as required by law, leads us to the obvious conclusion that the Trial Judge’s action in maintaining the defendants’ exception of no right of action was correct.
Accordingly, the judgment of the District Court is affirmed, the appellant to pay all cost of this appeal.
Judgment affirmed.