196 So.2d 47

**E. M. GLYNN, INC.**

v.

**Mrs. Olive T. DUPLANTIS et al.**

No. 48345.

Feb. 20, 1967.

Rehearing Denied March 27, 1967.

Charley J. Schrader, Jr., Houma, for plaintiff-relator.

Jack P. F. Gremillion, Atty. Gen., Willie D. Maynor, Special Counsel to the Atty. Gen., for amicus curiae.

Claude P. Boudreaux, Elton A. Darsey, Houma, for defendants-respondents.

HAMITER, Justice.

E. M. Glynn, Inc., a realty corporation, instituted the instant suit against Mrs. Olive T. Duplantis and eight other persons to recover a real estate commission, allegedly due and owing to it, of $25,887.69.

The petition recites an agreement to pay the commission to the plaintiff in the event it found a suitable tenant for certain property located in Terrebonne Parish and owned by defendants; that the negotiations were carried on by the realty corporation through its president, E. M. Glynn; that through its efforts a tenant (who subsequently entered into a lease with the defendants) was found; and that the sum claimed is the amount due for such services rendered under the contract.

The trial court dismissed the suit on an exception of no right of action. Its judgment was affirmed on plaintiff's appeal. 189 So.2d 84. We granted certiorari. 249 La. 732, 190 So.2d 240.

The Court of Appeal held that plaintiff was not duly licensed, because its bond had not been recorded in the mortgage records of Terrebonne Parish as required by LRS 37:1448; and that, consequently, under the provisions of LRS 37:1450 it could not recover a real estate brokerage fee. It also concluded that inasmuch as

E. M. Glynn, the corporate president, did not personally hold a broker's or a salesman's license the corporation was not entitled to the commission claimed.

Plaintiff urges that both conclusions were erroneous.

The statutory law regulating the realty business is found in Chapter 17 of the Louisiana Revised Statutes (37:1431–37:1459), the pertinent sections of which are hereinafter quoted or paraphrased.

LRS 37:1437 provides: "No person shall engage in the business or capacity, either directly or indirectly, of a real estate broker, a real estate salesman or a business chance broker unless he has a license under the provisions of this Chapter."

(This section clearly envisions the operation of the realty business by corporate entities. The legislation preceding the enactment of the Revised Statutes of 1950 specifically provided for licensing persons, partnerships, corporations, etc. Act 236 of 1920, as amended by Act 269 of 1928 and Act 175 of 1936. The multiple reference was abandoned, obviously for the sake of brevity, when the act was carried into the Revised Statutes. Such detailed listing then became unnecessary in view of the provisions of LRS 1:10 which declares that the word "person", when used in the statutes, is intended to include a body of persons whether incorporated or not.)

LRS 37:1447 requires that before any one engages in the realty business such

person shall furnish a bond, and it prescribes the conditions of the bond.

LRS 37:1448 states: "A. A copy of the bond required by R.S. 37:1447 shall be filed with the clerk of the district court of the parish of the domicile of the real estate agent or broker. * * *

"B. An additional copy of the bond required by R.S. 37:1447 shall also be filed with the clerk of court of the parish in which the personal surety on such bond owns immovable property, and in the parish of Orleans, with the recorder of mortgages.

"The clerk of court, or the recorder of mortgages in the parish of Orleans, shall record the bond in his mortgage records.

"C. The clerk of the district court shall keep an index book of the names of all persons filing bonds under this Section. The clerk, or recorder of mortgages, shall charge for such entry and recordation as now provided by law."

LRS 37:1449 sets out the criminal penalty for engaging in the business in question without furnishing or filing the required bond.

And LRS 37:1450 declares: "No person, not licensed in accordance with the provisions of this Chapter, shall recover any fee, claim or charge for brokerage in the courts of this state."

The regulation relative to the operation of branch offices, which is important in this discussion, is found in LRS 37:1441. It recites: "Every broker, except as otherwise provided in R.S. 37:1440A, shall maintain a place of business in this state. In case a broker maintains more than one place of business within this state, a branch office license shall be issued to such broker for each branch office so maintained. No branch office license shall be issued until the required bond is furnished and filed in the parish in which branch office is located."

The record in the instant case establishes that the Louisiana Real Estate Commission and the Louisiana Department of Occupational Standards had issued to the plaintiff corporation a license to operate generally as a real estate broker, its domicile being in Lafourche Parish. Also it was licensed to operate a branch office in Terrebonne Parish when it undertook the alleged contract with defendants and wherein their property is located.

The required statutory bond was executed in connection with the issuance of plaintiff's licenses, the surety being the Employer's Liability Assurance Corporation, Ltd. Copies of such bond were filed with the court clerk of the Parish of Terrebonne and with the clerk of Lafourche Parish. However, such copies were not recorded in the mortgage records of either parish. E. M. Glynn was the president of plaintiff corporation and acted for it in the negotiations with the

defendants. He did not personally hold a broker's or salesman's license.

From our study of the pertinent portions of Chapter 17 of the Revised Statutes, referred to above, we have concluded that the Court of Appeal erred in holding that LRS 37:1448 requires that all bonds, both corporate and personal, be recorded in the mortgage records of the parish in which the broker is domiciled and also in any parish where such broker has a branch office. It appears clear to us that neither the provisions of that section nor of any other sections have such meaning.

Subsection A of LRS 37:1448 does refer to bonds generally, corporate and personal. But the requirement is only that the bond be *filed* with the clerk of the district court of the parish where the broker has his domicile.

Subparagraph B (enacted in its entirety by Act 89 of 1962), in very plain terms, refers solely to *personal* surety bonds; and it provides the requirement that an additional copy of such personal bond must be filed with the clerk of court of the parish *in which the personal surety owns property,* and the clerk of that parish shall record the bond in his mortgage records. (In Orleans Parish such bonds shall be filed with the recorder of mortgages and by him recorded.)

Had it been the intention of the legislators to require recordation of *all* bonds in the mortgage records, surely this would have been done by amending the original provisions of Subsection A rather than by adding a new subsection (B) relating specifically and only to personal bonds.

Incidentally, the purpose of the insertion of the new subsection (B) is abundantly clear, and that is to provide notice to third persons of the bond encumbrance against the property owned by the personal surety. Such precaution is, of course, not necessary in the case of corporate bonds, as exist here, for recordation of those bonds in mortgage records would serve no *useful purpose.* Their existence can be ascertained by reference to the index book which the clerk of court, in Subsection C, is directed to maintain.

The provisions of said Subsection C of LRS 37:1448 neither add to nor detract from the conclusion we have hereinabove reached. That subsection simply requires that the clerk of court maintain an index book of the names of persons filing bonds under the section; and it further directs him, or the recorder of mortgages (in Orleans Parish), to charge for such entry and recordation. The reference to "entry" obviously refers to those instances where, under Subsection A, only an entry is required; and the reference to "recordation" relates to instances (when a personal bond

is involved) where, under Subsection B, a recordation in the mortgage records is necessitated.

We also believe that it is quite self-evident that LRS 37:1441, which controls the licensing of branch offices, demands *only* that the bond executed in connection with the branch office license be *filed* in the parish in which such office is located. There is no language whatever in that section to suggest that the bond, either personal or corporate, need be recorded in the mortgage records of that parish.

Inasmuch as the corporate bond of this plaintiff was filed with the clerk of the parish of its domicile and also with the clerk of the parish of its branch office, we hold that it was legally licensed and bonded.

We are further of the opinion that the Court of Appeal erred in concluding that the plaintiff corporation could not recover its commission because E. M. Glynn, personally, was not licensed. It is true that the corporation was a "closed corporation" and was wholly owned and controlled by Glynn. Nevertheless, having been duly chartered under the corporation laws of this state it is a separate entity from its incorporators and stockholders individually. Moreover, as aforeshown, the statute permits corporations to act as real

estate brokers; and it is well known that, legally, such an entity can operate only through its authorized officers.

Additionally, no provision of Chapter 17 requires that the officers be licensed personally in order to carry out the corporation's business. Consequently, when E. M. Glynn, for the corporation, negotiated the alleged contract with defendants his work was not that of E. M. Glynn individually, but it was an act of the duly licensed and bonded corporation.

This plaintiff further urges that the issues raised by the exception of no right of action were triable only on the merits of the controversy, after answer filed; and that the lower courts erred in determining such issues on the exception. In view of our conclusion reached hereinabove it becomes unnecessary for us to consider this specification of error.

For the reasons assigned the judgments of the district court and Court of Appeal, which dismissed plaintiff's suit on an exception of no right of action, are reversed and set aside; the exception of no right of action is now overruled; and the cause is remanded to the district court for trial on the merits according to law and consistent with the views hereinabove expressed. All costs of the appeal and those incurred in this court to be paid by defendants. All other costs shall await the final determination of the litigation.